PRESENT: Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
         Goodwyn, JJ., and Lacy, S.J.


VIRGINIA POLYTECHNIC INSTITUTE
AND STATE UNIVERSITY

v.    Record No. 080976                    OPINION BY
                                     JUSTICE BARBARA MILANO KEENAN
                                           April 17, 2009
MAYNARD QUESENBERRY


               FROM THE COURT OF APPEALS OF VIRGINIA

     In this case involving an appeal under Code § 2.2-3006(B)

from a grievance determination, we consider whether the Court of

Appeals erred in affirming the circuit court's judgment that a

hearing officer's decision upholding the termination of a state

employee was "contradictory to law."  We also consider whether

the Court of Appeals erred in rendering judgment based on the

elements of "sexual harassment" discussed in court decisions

applying Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e et seq. (Title VII).

     Maynard Quesenberry was employed as a business manager in

the Communications Network Services department at Virginia

Polytechnic Institute and State University (the University) for

29 years.  While employed by the University, Quesenberry

received favorable job performance evaluations.  However, in

April 2005, Quesenberry received a "Group II" written

disciplinary notice suspending him from work for four days for

misusing a university-owned computer and for gaining access to computer websites containing pornographic content.[*]

In 2006, the University terminated Quesenberry's employment after issuing him a "Group III" written disciplinary notice, which was based on a discussion Quesenberry had with a female student in violation of University Policy No. 1025 (the policy). After receiving this notice of termination, Quesenberry exhausted his internal administrative remedies and ultimately requested a hearing before an administrative hearing officer appointed by the Department of Dispute Resolution pursuant to Code §§ 2.2-3003 through -3005.

At a hearing held in September 2006, the hearing officer made the following factual findings. The hearing officer found that Quesenberry participated as a volunteer coach and a board member of a boxing club for "disadvantaged" youth (the club), which was a non-profit program that was not affiliated with the University.

The club held various fundraising events to support its activities, and club members discussed a project that would include development of a "boxing calendar," which would feature photographs of young, attractive women posing in the context of

---

[*] The Department of Human Resource Management Policies and Procedures Manual, in Policy 1.60, sets forth certain "standards of conduct" and describes levels of offenses ranging from the lowest level, "Group I," to the highest level, "Group III."

boxing activities.  The club members agreed that any such calendar must be produced in "good taste."

Quesenberry discussed the calendar with another male University employee who worked as a mail supervisor under Quesenberry's direction.  The mail supervisor, acting on his own initiative, asked several female students whether they would be interested in posing for the calendar.  Quesenberry later learned about this conduct and directed the mail supervisor to stop initiating such conversations.

The mail supervisor, contrary to Quesenberry's directive, initiated a discussion about the calendar with a 20-year-old female student who worked for a student-run organization.  The mail supervisor informed Quesenberry that he should meet this student because "she might be interested in [the boxing calendar] fundraiser."

The two men visited the student in her office located on the University campus.  Quesenberry explained to the student that he was in search of models to pose for pictures in the calendar, that these pictures would be "tastefully done," and that the women would be photographed wearing "short shorts" or a bathing suit.  The student reported that during this conversation, which lasted less than 15 minutes, she was "uncomfortable" and thought that the men were "objectifying" her.

As a result of her conversation with Quesenberry and the mail supervisor, the student began closing and locking her office door. The student also took a less direct route to her office to avoid the possibility of encountering the two men.

Based on these factual findings, the hearing officer rendered a decision under the policy, which was entitled "Anti-Discrimination and Harassment Prevention Policy." The portion of the policy on which the hearing officer relied, section 2.1, is labeled "Prohibited Acts." The hearing officer cited the second paragraph of that section, which states in relevant part:

Discrimination/Harassment includes the following behaviors:

. . . .

Conduct of any type . . . based upon a person's . . . gender . . . and which unreasonably interferes with the person's work or academic performance or participation in University activities, or creates a working or learning environment that a reasonable person would find hostile, threatening or intimidating.

The hearing officer concluded that Quesenberry failed to comply with this portion of the policy.

The hearing officer found that Quesenberry "focused on the [s]tudent because she was a young attractive female." Also, the hearing officer concluded that the student's work performance and participation in University activities had diminished as a result of her encounter with Quesenberry, and that the student had become "introverted" in a manner that materially affected

4

her and other people with whom she worked. Thus, the hearing officer concluded that Quesenberry's actions unreasonably interfered with the student's work and participation in University activities.

The hearing officer stated that while the student overreacted to her encounter with the two men, if the hearing officer disregarded that overreaction, the remaining facts supported the University's position concerning the student's response. The hearing officer further noted that Quesenberry's conduct did not constitute "sexual harassment" in the "legal sense" because the conduct was not severe or pervasive.

The hearing officer reduced Quesenberry's disciplinary action from a "Group III" offense to a "Group II" offense because, in the hearing officer's opinion, Quesenberry did not intentionally engage in inappropriate behavior. However, the hearing officer upheld Quesenberry's termination from employment based on Quesenberry's accumulation of two "Group II" offenses within three years.

As permitted by Code § 2.2-3006(B), Quesenberry appealed from the hearing officer's decision to the Circuit Court of Montgomery County and asked that the circuit court reverse the hearing officer's decision as being "contradictory to law." Quesenberry further requested that the circuit court reinstate his employment and award him accrued compensation, benefits, and

5

attorney's fees. After conducting a hearing, the circuit court determined that the hearing officer's decision was "contrary to law" and ordered that Quesenberry be reinstated in his employment and be compensated for wages accrued since the date of his termination.

In its final judgment order, the circuit court listed several reasons in support of its decision: (1) Quesenberry's conduct was not "sexual harassment;" (2) the student was not offended by her "brief encounter" with Quesenberry; (3) there was no evidence that the student's work or participation in school activities were "in any way impacted" by the encounter; (4) "[n]o reasonable person" could describe the environment in which the encounter occurred as a hostile or intimidating environment; (5) Quesenberry did not engage in unwelcome sexual advances or verbal or physical conduct of a sexual nature; (6) Quesenberry was not the student's supervisor; (7) the hearing officer found that the student had overreacted to the encounter; and (8) there was no evidence of severe or pervasive conduct "giving rise to sexual harassment."

The University preserved its objection to the circuit court's final judgment order, noting that neither Quesenberry nor the circuit court had identified a statute, regulation, or rule of law that was contradicted by the hearing officer's

decision. The University appealed from the circuit court's judgment to the Court of Appeals.

The Court of Appeals affirmed the circuit court's judgment in Virginia Polytechnic Institute and State University v. Quesenberry, 51 Va. App. 553, 659 S.E.2d 546 (2008). Although the hearing officer specifically had found that Quesenberry's conduct did not constitute "sexual harassment," the Court of Appeals nevertheless analyzed his appeal under that particular section of the policy. Id. at 562, 659 S.E.2d at 551.

According to the Court of Appeals, that particular section of the policy prohibiting "sexual advances, requests for sexual favors, [or other verbal] or physical conduct of a sexual nature" was "taken directly from 29 C.F.R. 1604.11(a), the federal regulation defining sexual harassment as it pertains to Title VII." Id. at 560, 659 S.E.2d at 550. The Court of Appeals applied reasoning contained in some federal court decisions interpreting that definition of "sexual harassment" and affirmed the circuit court's judgment, holding that the hearing officer's decision was contradictory to law. Id. at 565, 659 S.E.2d at 552.

The Court of Appeals concluded that because Quesenberry had not engaged in sexual advances or other conduct that could be deemed sexual in nature, his conduct "did not fall within the ambit of [the policy]." Id. at 564, 659 S.E.2d at 552. We

7

awarded the University this appeal because the case involves a matter of significant precedential value.  <u>See</u> Code § 17.1-410(B).

The University argues that the hearing officer's decision should be upheld because the decision was not "contradictory to law" under the standard of review set forth in Code § 2.2-3006(B).  According to the University, the General Assembly specified this narrow standard of review in recognition of a state agency's "exclusive right" to manage its affairs and operations as provided by Code § 2.2-3004(B).  The University contends that the circuit court erred in employing a broader standard of review than permissible by making its own factual findings and by basing its decision on those factual findings. The University further asserts that the circuit court and the Court of Appeals should have approved the hearing officer's decision because Quesenberry failed to demonstrate that the hearing officer's decision was contradictory to law.

The University also argues that the Court of Appeals erred in applying an analysis grounded on "sexual harassment" claims brought under Title VII.  The University contends that although certain language in the policy mirrors language in federal regulations defining "sexual harassment" for purposes of Title VII, this similarity does not prevent state agencies in Virginia

from formulating additional, more stringent regulations and policies than those contained in Title VII.

In response, Quesenberry asserts that the Court of Appeals correctly affirmed the circuit court's judgment because the hearing officer's decision was contradictory to law. He argues that the Court of Appeals properly applied an analysis based on sexual harassment claims brought under Title VII, because a portion of the policy mirrors language applicable to such Title VII claims. Quesenberry argues that the Court of Appeals correctly concluded that his conduct was not severe and pervasive, and that there was no objective evidence that he created a hostile or abusive work environment. Quesenberry further maintains that because the hearing officer determined that his conduct did not constitute sexual harassment, he should not have been disciplined for failure to comply with the policy.

In addition, Quesenberry argues that the hearing officer's decision was contradictory to his own factual findings because the officer determined that the student had overreacted to Quesenberry's inquiries. Thus, Quesenberry concludes that the hearing officer's own factual findings required that the hearing officer resolve the grievance in favor of Quesenberry. We disagree with Quesenberry's arguments.

In a plainly stated statutory framework, the Code of Virginia provides grievance procedures applicable to state

9

agency employees, granting an employee a right to a hearing before a designated hearing officer when that employee has been formally disciplined.  See Code §§ 2.2-3001 and 2.2-3004(A)(i). This grievance procedure applies to all non-probationary state employees, including non-probationary employees of the University.  See Code § 2.2-3001(A) and 8 VAC § 105.

As provided by statute, a hearing officer appointed by the Department of Employment Dispute Resolution has certain powers and duties with regard to a grievance hearing, including the consideration of evidence and the determination of appropriate remedies.  Code §§ 2.2-3005 and 2.2-3005.1.  The hearing officer's decision, which must be in writing, shall contain findings of fact and the hearing officer's basis for making those factual findings.  Code § 2.2-3005.1(C)(i) and (ii).  The hearing officer's decision is final and binding "if consistent with law and policy."  Code § 2.2-3005.1(C)(iii).

If a grievant contends that the hearing officer's decision is contrary to the "policy" of the state agency employing the grievant, the grievant may request that the decision be reviewed by the Director of the Department of Human Resources Management, who shall determine whether the hearing officer's decision "is consistent with [agency] policy."  Code § 2.2-3006(A).  In the present case, Quesenberry did not request such a "policy" review.

10

Instead, as permitted by Code § 2.2-3006(B), Quesenberry appealed to the circuit court from the hearing officer's decision on the ground that the hearing officer's decision was "contradictory to law."  Under that statutory provision, if an unsuccessful grievant establishes that the hearing officer's decision is "contradictory to law," the circuit court may reverse or modify the hearing officer's decision.  See Code § 2.2-3006(B).

The Court of Appeals previously has held that a party appealing from a hearing officer's decision to a circuit court is required to "specify how that decision [was] 'contradictory' to law and what 'law' [was] thereby being contradicted."  Tatum v. Virginia Dept. of Agric., 41 Va. App. 110, 122, 582 S.E.2d 452, 458 (2003) (quoting Virginia Dept. of State Police v. Barton, 39 Va. App. 439, 445-46, 573 S.E.2d 319, 322 (2002)).  The appealing party must "identify [a] constitutional provision, statute, regulation or judicial decision which the [hearing officer's] decision contradicted."  Tatum, 39 Va. App. at 122, 582 S.E.2d at 458 (quoting Barton, 39 Va. App. at 446, 573 S.E.2d at 323).

We agree with this analysis of the burden of a litigant who appeals a hearing officer's decision to a circuit court.  The General Assembly has articulated a very narrow standard of review to be applied by the circuit court in such appeals.

11

Because this standard focuses solely on the question whether the hearing officer's decision is contradictory to any applicable law, the party appealing the hearing officer's decision properly bears the burden of identifying the law thereby contradicted.

In the present case, Quesenberry failed to identify to the circuit court any applicable constitutional provision, statute, regulation, or court precedent of this Commonwealth that the hearing officer contradicted, and appeared to rely solely on federal decisions interpreting Title VII. This reliance was misplaced, because Quesenberry's grievance did not involve a Title VII claim but was an administrative proceeding conducted under the Virginia state grievance procedures provided in Code §§ 2.2-3000 through -3008.

In addition, because the hearing officer specifically concluded that Quesenberry had not engaged in "sexual harassment," there was no issue of "sexual harassment" before the circuit court in Quesenberry's appeal. The hearing officer's decision was based on Quesenberry's violation of the second paragraph of section 2.1 of the policy, which prohibits any conduct based on a person's gender that unreasonably interferes with the person's work or participation in University activities. Thus, the federal decisions addressing "sexual harassment" were not germane in any respect to the issue before the circuit court.

The Court of Appeals engaged in the same erroneous analysis of "sexual harassment" as did the circuit court. Instead of addressing the portion of the policy that formed the basis of the hearing officer's decision to determine whether that decision was "contradictory to law," the Court of Appeals examined a different provision in the policy prohibiting sexual harassment. The Court further considered as persuasive authority federal court decisions interpreting "sexual harassment" under Title VII, when the hearing officer had explicitly rejected "sexual harassment" as a basis for his decision.

This appeal, therefore, is presented to us in an unusual posture, in which the circuit court failed to conduct the required review to determine whether the hearing officer's decision was "contradictory" to applicable law. See Code § 2.2-3006(B). Instead, the circuit court, in the absence of any statutory authority, made its own factual findings and determined that Quesenberry did not engage in "sexual harassment."

The Court of Appeals explained the proper review process several years ago in Barton:

> These statutes clearly provide [that] the hearing officer is to act as fact finder and the Director of the Department of Human Resource Management is to determine whether the hearing officer's decision is consistent with policy. In the grievance process, neither of these determinations is

13

> subject to judicial review, but only that part of the grievance determination "contradictory to law."

39 Va. App. at 445, 573 S.E.2d at 322; accord Tatum, 41 Va. App. at 121-24, 582 S.E.2d at 458-59. Here, because Quesenberry failed to identify any applicable law that was contradicted by the hearing officer's decision, Quesenberry's appeal to the circuit court failed from its inception. See Tatum, 41 Va. App. at 122, 582 S.E.2d at 458; Barton, 39 Va. App. at 445-46, 573 S.E.2d at 322-23.

Nevertheless, Quesenberry asks us to consider the issue whether the hearing officer's decision was contrary to the hearing officer's own factual findings. We do not consider this issue, or the preliminary question whether a factual review of this very limited nature is permitted under the applicable statutory review process, because the record fails to show that Quesenberry made this argument either in the circuit court or in the Court of Appeals. See Prince Seating Corp. v. Rabideau, 275 Va. 468, 469, 659 S.E.2d 305, 306-07 (2008); Manassas Autocars, Inc. v. Couch, 274 Va. 82, 89, 645 S.E.2d 443, 447 (2007); Jackson v. Commonwealth, 266 Va. 423, 436 n.1, 587 S.E.2d 532, 542 n.1 (2003). In addition, Quesenberry has failed to assign cross-error to the Court of Appeals' judgment on this basis. See Rule 5:18(b). Having failed to do so, Quesenberry is precluded from asking us to affirm the Court of Appeals'

14

judgment on that basis.  See id.; Hicks v. Mellis, 275 Va. 213, 221 n.2, 657 S.E.2d 142, 146 n.2 (2008); Jackson, 266 Va. at 436 n.1, 587 S.E.2d at 542 n.1; Board of Supervisors of Fairfax County v. Lake Services, Inc., 247 Va. 293, 298 n.*, 440 S.E.2d 600, 603 n.* (1994).

We hold that because Quesenberry failed to identify any applicable law that the hearing officer's decision contradicted, both the Court of Appeals and the circuit court lacked any basis for reviewing the hearing officer's decision.  See Code § 2.2-3006(B); Tatum, 41 Va. App. at 122-24, 582 S.E.2d at 458-59; Barton, 39 Va. App. at 445-47, 573 S.E.2d at 322-24. Accordingly, we further hold that the Court of Appeals erred in affirming the circuit court's judgment reinstating Quesenberry to his previous position of employment and awarding him compensation for accrued wages.

For these reasons, we will reverse the Court of Appeals' judgment, and will enter final judgment reinstating the hearing officer's decision.

Reversed and final judgment.

15