UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Huff, Judges Beales and AtLee
Argued by teleconference


VIRGINIA DEPARTMENT OF JUVENILE JUSTICE

v.      Record No. 1812-14-2

SEAN MILNER                                    MEMORANDUM OPINION[*] BY
                                               JUDGE RANDOLPH A. BEALES
VIRGINIA DEPARTMENT OF JUVENILE JUSTICE                JULY 21, 2015

v.      Record No. 2147-14-2

SEAN MILNER


               FROM THE CIRCUIT COURT OF HENRICO COUNTY
                      Margaret P. Spencer, Judge Designate

          G. William Norris, Jr., Assistant Attorney General (Mark R. Herring,
          Attorney General; Rhodes Ritenour, Deputy Attorney General; Ryan
          Spreague Hardy, Assistant Attorney General, on briefs), for
          appellant.

          James B. Thorsen (Thorsen Hart & Allen, LLP, on brief), for
          appellee.


     The Virginia Department of Juvenile Justice (DJJ) appeals a ruling of the Circuit Court of

Henrico County reversing a decision by a hearing officer in an employee grievance filed by Sean

Milner (Milner) and granting Milner's request for relief, which includes reinstatement to his former

position as Court Services Unit (CSU) Director.  DJJ also appeals from a separate order by the

circuit court awarding Milner attorney's fees and costs accrued during the proceedings in that court.

We hold that the hearing officer's decision was not contrary to law and, accordingly, we reverse the

_____

     [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

circuit court's orders granting Milner's requested reinstatement as CSU Director and awarding him attorney's fees and costs.

## I. BACKGROUND

This grievance arises from Milner's reassignment from his former position as Director of the CSU for the Henrico County Juvenile and Domestic Relations District Court (JDR court) to the newly created position of Assistant Certification Manager. The CSU provides support services to the JDR court. It is not a part of the judicial branch but instead is a part of DJJ, a department in the executive branch. Code § 16.1-233. Nonetheless, the CSU is located in the same building as the Henrico JDR court, and the JDR court is the "primary customer" of the services rendered by the CSU staff. The position of CSU Director, which Milner held, is a statutory creation. Code § 16.1-236.1(A). According to that statute, the Director of a particular CSU must be appointed by the judges of the JDR court served by that CSU (from a list of names of eligible individuals submitted by the Director of DJJ). Id. Meanwhile, the "transfer, demotion, or separation" of a CSU Director is under the authority of the Director of DJJ, but must be for good cause, after consultation with the JDR court judges, and in accordance with the Virginia Personnel Act, including the state employee grievance procedure. Id.

On March 21, 2013, five judges of the JDR court, along with a former judge, submitted a "no confidence" letter to the Director of DJJ, expressing their loss of confidence in Milner and complaining of Milner's management style and interpersonal relationship skills. A deputy sheriff escorted Milner from the courthouse and told him he could not return. Subsequently, DJJ conducted an internal investigation of Milner.[1] The investigation revealed mixed opinions about Milner from CSU staff – along with primarily negative opinions about him from the JDR court

---

[1] The final investigative report states that the investigation resulted from complaints of staff members, as well as from the JDR court judges, about Milner.

judges. The investigation also found that most CSU staff believed the relationship between the CSU and the JDR court was very poor.

After the investigation was completed, DJJ reassigned Milner from CSU Director to the newly created position of Assistant Certification Manager, and the reassignment became final on July 12, 2013. Milner had not been aware of the investigation while it took place, and he did not receive a copy of the investigative report until July 15, 2013. Milner's salary and benefits remained the same in the new position, and he in fact later received a raise. His supervisory role was greatly reduced however, as he had only four employees reporting to him in the chain of command in his new position, compared to around fifty when he was CSU Director.

## A. GRIEVANCE PROCEDURE

On July 30, 2013, Milner filed a grievance challenging the reassignment and asking to be reinstated as CSU Director. Virginia's state employee grievance procedure is created by statute, see Code § 2.2-3000 *et seq.*, and set out in further detail by policy of the Department of Human Resources Management (DHRM) and its sub-agency, the Office of Employment Dispute Resolution (EDR). See Office of Emp't Dispute Resolution, Grievance Procedure Manual (2012); Office of Emp't Dispute Resolution, Rules for Conducting Grievance Hearings (2012). The process consists of several stages, beginning with three steps of internal dispute resolution with management of the agency that employed the aggrieved employee. Code § 2.2-3003; Grievance Procedure Manual §§ 3.1-3.3. If the grievance is not resolved after the third resolution step, the employee can then request that his agency head qualify the grievance for a hearing. Code § 2.2-3004(D); Grievance Procedure Manual § 4.2. If the agency head does not qualify the grievance for a hearing, the employee can appeal the qualification decision to EDR. Code § 2.2-3004(D); Grievance Procedure Manual § 4.3.

The Grievance Procedure Manual states that a grievance

> should qualify for a hearing if (i) it claims, and (ii) the facts, taken as a whole, raise a sufficient question as to whether an adverse employment action has occurred as a result of . . . [i]nformal discipline – for example, terminations, transfers, assignments, demotions, and suspensions – that . . . are taken primarily for disciplinary reasons.

Grievance Procedure Manual § 4.1(b). The decision of the hearing officer is final except as to issues of policy and law. Code § 2.2-3005.1(C). The grievant may seek administrative review of the hearing officer's decision by appealing to EDR, which reviews compliance with grievance procedure, and to the Director of DHRM, who reviews the decision for consistency with state or agency policy. Grievance Procedure Manual § 7.2. The grievant may also appeal the decision to the circuit court to review as to whether the decision is contrary to law. Code § 2.2-3006(B).

Milner and DJJ did not reach an agreement after going through the three internal management dispute resolution steps at DJJ, and the Director of DJJ refused to qualify Milner's grievance for a hearing. Milner appealed this qualification decision to EDR, which issued Qualification Ruling Number 2014-3721, qualifying Milner's grievance for a hearing. EDR stated that it had "no basis to disagree with [DJJ's] assessment that the statutory good cause requirement was satisfied,"[2] but did find that the facts of Milner's grievance raised a sufficient question as to whether his reassignment was an "adverse employment action" that was taken for disciplinary reasons. On this basis, EDR qualified the grievance hearing and defined the issues to be decided by the hearing officer as follows:

> Whether the grievant's reassignment was primarily to punish or correct the grievant's behavior or performance is a factual determination that a hearing officer, not this Office, should make. At the hearing, the grievant will have the burden of proving that the reassignment was adverse and disciplinary. If the hearing officer finds that it was, the agency will have the burden of proving that the

---

[2] This statement was made in reference to the good cause requirement of Code § 16.1-236.1(A) that is necessary for DJJ to transfer, demote, or separate a CSU Director.

- 4 -

action was nevertheless warranted and appropriate. Should the hearing officer find that the reassignment was adverse, disciplinary, and unwarranted and/or inappropriate, he or she may rescind the reassignment . . . .

Milner's grievance hearing was held on January 6, 2014, and decided on February 20, 2014. The hearing officer's findings of fact generally reflected positively on Milner, noting that Milner "became Director of an ineffective Court Service Unit with numerous human resource problems" and that Milner took steps to improve morale, make the CSU more effective, and "put the client first." The findings of fact also suggested that any dissatisfaction with Milner from CSU employees, as found by DJJ's investigation, was because Milner's managerial improvements "met resistance from poorly performing employees." The hearing officer also found that there was a largely dysfunctional relationship between the CSU and the JDR court, as reflected by the comments of CSU employees in the investigative report. The findings of fact noted that Milner and the Chief Judge of the JDR court frequently clashed and had a very strained relationship.

Addressing the issues as defined by EDR, the hearing officer first found that Milner's reassignment was an adverse employment action due to the change in responsibilities between the two positions and the significant loss of managerial responsibility in Milner's new role. The hearing officer further found, however, that Milner did not establish "that his reassignment was disciplinary in nature by [DJJ]," but rather was in response to the JDR court's actions. Noting that Milner "did not engage in any behavior that would support disciplinary action" by DJJ, the hearing officer still determined that DJJ had good cause, as required by Code § 16.1-236.1, to reassign Milner because the poor relationship between him and the JDR court made it practically impossible for Milner to do his job and for the CSU to function properly. The hearing officer did find that the actions taken by the JDR court were "disciplinary in nature." However, because Milner was not an employee of the JDR court and the JDR court was not a party to the hearing, the hearing officer determined that he did not have jurisdiction to grant Milner any remedy for these actions. Milner then appealed the

- 5 -

hearing officer's decision to EDR and DHRM, which concluded that the decision was consistent with grievance procedure and state personnel policy, respectively.

## B. APPEAL TO THE CIRCUIT COURT

On April 10, 2014, Milner appealed the decisions of the hearing officer, of EDR, and of DHRM to the Henrico County Circuit Court. On September 2, 2014, the circuit court ruled in Milner's favor. The circuit court first focused on the hearing officer's finding that DJJ's actions were not disciplinary in nature, but that the JDR court's actions were. The court held that, as a matter of law, the JDR court could not take disciplinary action against Milner because to do so would violate the Separation of Powers doctrine. The court also held that the hearing officer's finding that the JDR court, and not DJJ, acted in a disciplinary manner was contrary to state grievance procedures and statutes because this finding would "exempt[] employees assigned to work in courthouses with judges from rights and remedies in the code." These employees, the circuit court elaborated, are not among those specifically exempted from the grievance procedure by statute.

In addition, the circuit court found that "the hearing officer's conclusion that it lacked jurisdiction is also contrary to law." The circuit court noted DJJ's concession in argument that the hearing officer would have had jurisdiction to grant Milner a remedy if the JDR court's actions were discriminatory. Similarly here, the circuit court stated, "if [DJJ's] employee was subjected to adverse employment actions and disciplinary actions by the only employer and Executive Branch

- 6 -

department that could do so as a matter of law," then the hearing officer had jurisdiction to grant Milner relief.[3]

Finally, the circuit court determined that the hearing officer's decision was contrary to Code § 16.1-236.1, which explains the requirements that must be met to transfer a CSU Director. The court noted that the statute does not authorize the JDR court judges to transfer a CSU Director, but instead only allows them to act in an advisory role to the DJJ Director. The circuit court also stated that whether "good cause" for the transfer existed, as required under the statute, was improperly decided by the hearing officer as a question of fact. Instead, the circuit court determined that the existence of good cause, which requires a "legally sufficient ground or reasons" for the transfer, is a question of law that should be addressed by the court. The circuit court held that the facts found in the hearing, including the finding that Milner "did not engage in any behavior that would support disciplinary action," supported a legal conclusion that DJJ did not have good cause to transfer Milner.

The circuit court entered its order on September 2, 2014, reversing the hearing officer and "grant[ing] the Appellant Milner's request for relief." On September 5, 2014, Milner moved the circuit court to award him attorney's fees pursuant to Code § 2.2-3006(E), and the court granted his motion on November 17, 2014. DJJ's appeals from the circuit court's ruling on the merits and from the circuit court's award of attorney's fees were consolidated into this appeal.

---

[3] The circuit court next found that the hearing officer had authority to reduce the discipline imposed on Milner if it believed that discipline was too severe. This does not appear to be challenged on this appeal by either party. The circuit court also noted that there was no evidence in the record of an order having been entered by the JDR court that barred Milner from entering the courthouse. The parties do not appear to challenge the circuit court's decision on this point.

II.  ANALYSIS

DJJ raises eight assignments of error on appeal.  Six of these assignments of error relate to the merits of the circuit court's decision to reverse the hearing officer, while the other two relate to the circuit court's award of attorney's fees to Milner.  We discuss these two classes of alleged error separately.

A.  MERITS OF THE CIRCUIT COURT'S DECISION

1.  STANDARD OF REVIEW

The state grievance employee procedure limits the scope of review of each body that reviews a grievance after it has gone through the agency's internal resolution steps.  This "tripartite review procedure" sets forth the following roles: (1) the hearing officer is the finder of fact and final authority on factfinding; (2) DHRM (and EDR, which is part of DHRM) determine whether the hearing officer's ruling is in compliance with personnel policy and grievance procedure (respectively); and (3) the courts determine whether the grievance determination is "contradictory to law."  Va. Dep't of State Police v. Barton, 39 Va. App. 439, 445, 573 S.E.2d 319, 322 (2002).  The hearing officer's findings of fact and the administrative determinations of compliance with grievance procedure by EDR and personnel policy by DHRM are not subject to judicial review.  Id.

The courts are limited to ascertaining compliance with constitutional provisions, statutes, regulations, and judicial decisions.  Va. Polytechnic Inst. & State Univ. v. Quesenberry, 277 Va. 420, 429, 674 S.E.2d 854, 858 (2009).  Therefore, any determination made by the circuit court that should properly be categorized as an issue of fact, policy, or procedure is outside the scope of its review, and the circuit court should instead defer to the determinations of the hearing officer and administrative bodies on these issues.  The same standard of review that applies in the circuit court also applies in this Court.  Va. Dep't of Corr. v. Compton, 47 Va. App. 202, 219,

623 S.E.2d 397, 405 (2005).  Because the only issues that are actually within the scope of our review (and the circuit court's review) are issues of law, we review these issues *de novo*.  Pound v. Dep't of Game & Inland Fisheries, 40 Va. App. 59, 64, 577 S.E.2d 533, 536 (2003).

### 2. DISCIPLINARY NATURE OF MILNER'S REASSIGNMENT

DJJ's first two assignments of error assert that the circuit court overstepped its limited role in determining that Milner's reassignment was disciplinary, and therefore that the hearing could proceed to the issue of whether the reassignment was warranted and appropriate.  This action, DJJ argues, usurped the roles of DHRM, EDR, and the hearing officer to make determinations as to policy, procedure, and factual questions, respectively.  We agree that this determination was outside the scope of the circuit court's review.

As DJJ notes, the grievance procedure is limited in its applicability, and the criteria for a grievance to proceed to a full hearing are set out in the Grievance Procedure Manual. Specifically, a grievance may qualify for a hearing if the challenged action amounted to informal discipline.  Grievance Procedure Manual § 4.1(b).  It was up to EDR to decide whether Milner's grievance qualified for a hearing under these guidelines, and if it did qualify, what the scope of that hearing would be and what preliminary findings the hearing officer would need to make.

In this case, the hearing officer was to determine whether the reassignment was an adverse and disciplinary employment action before moving on to the merits.  This definition of the issues to be determined by the hearing officer reflected EDR's interpretation of its own guidelines, and was entitled to deference from the circuit court.  Further, EDR determined after the hearing that the hearing officer's decision complied with the overall grievance procedure. Similarly, DHRM found that the hearing officer's decision was in compliance with state personnel policy.  To the extent the circuit court found that the hearing officer's decision violated EDR's or DHRM's own guidelines, this was in error because the circuit court's review was

limited to determining whether the grievance was carried out in compliance with the law. Quesenberry, 277 Va. at 428-29, 674 S.E.2d at 858.

The circuit court also erred to the extent it determined, contrary to the hearing officer's finding, that Milner's reassignment was disciplinary. First, as noted earlier, EDR defined the scope of the hearing – and specifically stated that whether Milner's reassignment "was primarily to punish or correct [Milner's] behavior or performance is a factual determination that a hearing officer, not this Office, should make." This definition of the issues, including the description of disciplinary intent as a question of fact, is entitled to deference from the courts. Furthermore, because DJJ was the party that carried out the reassignment of Milner to a different position within DJJ, it necessarily follows that the disciplinary nature of the reassignment depended upon whether DJJ acted with disciplinary intent. Generally, the determination of a party's intent is characterized as a question of fact. See, e.g., Mason v. Commonwealth, 49 Va. App. 39, 45, 636 S.E.2d 480, 483 (2006) ("'Whether the required intent exists is generally a question for the trier of fact.'" (quoting Crawley v. Commonwealth, 25 Va. App. 768, 773, 492 S.E.2d 503, 505 (1997))); Jacobsen v. Jacobsen, 41 Va. App. 582, 589, 586 S.E.2d 896, 899 (2003) ("'Intent . . . is a question of fact to be determined from the evidence.'" (quoting Hall Bldg. Corp. v. Edwards, 142 Va. 209, 215, 128 S.E. 521, 523 (1925))). Here, the hearing officer's determination that DJJ did not act with disciplinary intent was likewise a finding of fact that the circuit court, acting here as an appellate court, had no authority to reverse.

For this reason, we also agree with DJJ's fourth assignment of error, namely that the circuit court erred in reversing the hearing officer's decision based on the Separation of Powers doctrine. This holding by the circuit court appears to be based upon a mischaracterization of the hearing officer's findings. While the hearing officer found that the JDR court's actions were "disciplinary in nature," the circuit court appeared to interpret this as a finding that the JDR court actually

disciplined Milner and was responsible for his reassignment. It then held that this version of events constituted a Separation of Powers violation because Milner was an employee of the executive branch and the JDR court is a part of the judicial branch.

This reasoning, however, is flawed. The circuit court was correct to note that the JDR court did not have direct authority to discipline Milner, an employee of a different branch of the government. This, however, is not what the hearing officer found to have taken place. Although the hearing officer noted that the JDR court's actions were "disciplinary in nature," there is no indication that he found that the JDR court took the actual step of reassigning Milner. In fact, the hearing officer's opinion strongly supports the view that the JDR court did not have authority to do so. In addition, as DJJ notes, it is not a constitutional violation for some overlap to exist between the functions of the different branches. Taylor v. Worrell Enters., Inc., 242 Va. 219, 221-22, 409 S.E.2d 136, 138 (1991). Here, the JDR court acted in a purely advisory role when it issued its no-confidence letter, as the ultimate decision of whether to remove Milner from his position rested with the Director of DJJ. Furthermore, to the extent the JDR court influenced DJJ's decision, this was permissible, as there was a practical necessity that the JDR court and the CSU Director maintain a good – or at least a functional – working relationship.

### 3. GOOD CAUSE

DJJ's third assignment of error alleges that the circuit court erred in finding that DJJ did not have "good cause" to transfer Milner to his new position, as is required under Code § 16.1-236.1(A). DJJ urges us to treat the hearing officer's finding of good cause as a finding of fact, in which case, as discussed *supra*, it is entitled to deference from the courts. However, even assuming, without deciding, that the existence of good cause is actually a question of law, DJJ has presented sufficient evidence to show that it reassigned Milner from CSU Director to Assistant Certification Manager for good cause. Although the hearing officer found that Milner did not do

- 11 -

anything that was deserving of punishment, DJJ had good reason not to let him remain as CSU Director. DJJ did not have any authority to make the JDR court judges change their opinion of Milner or to force them to cooperate with him. It also had a legitimate interest in doing what was necessary to maintain a working relationship between its employees and the JDR court. DJJ determined, within its discretion, that the Henrico CSU could no longer function with Milner as Director because, rightly or wrongly, it was impossible for him to do his job as CSU Director.

In fact, DJJ even took steps to minimize the adverse effect of Milner's reassignment. Milner's new position provided the same salary and benefits, and he eventually received a raise. DJJ offered to keep the investigation report out of Milner's personnel file, and even offered to let him submit a backdated "voluntary transfer request" so that it would not appear that he was forced out as CSU Director. Although DJJ could not grant Milner's request to name him Director of another CSU because that appointment required approval by the judges of that court under Code § 16.1-236.1(A), it noted that Milner was still welcome to apply for any vacancies in these positions or any higher-level positions. These facts, taken as a whole, do not suggest that DJJ reassigned Milner arbitrarily or as a form of unwarranted punishment, but instead did so because it found that, by the very nature of his position, Milner needed to be reassigned to enable a functional working relationship to exist between the Henrico CSU and the JDR court judges.

### 4. CONSISTENCY WITH GRIEVANCE STATUTES

DJJ's fifth assignment of error challenges the circuit court's ruling that the hearing officer's decision – specifically its finding that DJJ did not take disciplinary action – was inconsistent with grievance procedure as set out by statute. The circuit court asserted that this decision contradicts Code §§ 2.2-3001(A), 2.2-3002, and 2.2-3005.1(A) because it left no remedy for Milner, effectively exempting him from the protections of the grievance procedure despite not being listed as an exempt employee. This reading, however, appears to confuse the fact that Milner did not achieve

- 12 -

his desired result with a lack of procedural fairness. The grievance process is a limited statutory remedy for state employees, and not every employment action qualifies for a hearing under this process. Here, Milner's grievance went through every procedural step available under statute and policy to which he was entitled based on the facts of his case. The administrative bodies responsible for interpreting these requirements found that Milner would not be entitled to argue the merits of his reassignment, unless he proved that DJJ's actions were disciplinary, and this interpretation is entitled to deference. Just because Milner did not meet his burden does not mean the process he went through was unfair.

Similarly, we also agree with DJJ's sixth assignment of error – that the circuit court was incorrect in finding that the hearing officer's conclusion that he lacked jurisdiction over the JDR court was contrary to law. The circuit court determined that the hearing officer had jurisdiction to take the necessary action pursuant to Code § 2.2-3005(C)(7) because Milner was subject to an adverse employment action by DJJ that arose from a disciplinary-type action by the JDR court. The circuit court also expressed concern that, if the hearing officer did not have jurisdiction over the JDR court, then a remedy might not be available in instances where the JDR court acted with discriminatory intent.

Code § 2.2-3005(C)(7), however, limits the hearing officer's ability to take remedial action "as necessary or specified in the grievance procedure." Therefore, the hearing officer needed to act within the limits of the grievance procedure, as interpreted by EDR in its qualification ruling. The hearing officer also could not take action against the JDR court for any of its acts, as this was outside the scope of the grievance. See Rules for Conducting Grievance Hearings § IV.A. This issue is one of policy and procedure, which was properly disposed of at the administrative level, and is, consequently, outside the scope of this Court's review – and the circuit court's review.

- 13 -

In addition, the circuit court's fears of discrimination are inapplicable in this case because Milner never alleged that any of the parties involved acted with discriminatory intent – e.g., discrimination based on race, gender, or national origin.  If he had alleged discrimination, other remedies may well have been available.  For example, under the Grievance Procedure Manual, if Milner had alleged discrimination, then the hearing officer would not have even needed to make a preliminary finding that Milner's employer had acted in a disciplinary manner.  See Grievance Procedure Manual § 4.1(b) (distinguishing between grievances for alleged discrimination and grievances for informal disciplinary actions).  Other judicial remedies outside of the grievance process may also have been available to Milner if he had alleged and shown discrimination.

## B.  ATTORNEY'S FEES

DJJ's final two assignments of error challenge the circuit court's award of attorney's fees and costs to Milner.  Code § 2.2-3006(E) states that a court "shall award reasonable attorney's fees and costs to the employee if the employee substantially prevails on the merits" of his case.  Because we reverse the ruling of the circuit court on the merits, Milner no longer substantially prevails in this matter, and, therefore, he is not entitled to an award of attorney's fees and costs.  Consequently, we vacate the circuit court's award of attorney's fees and costs.  We, therefore, need not reach DJJ's other assignment of error arguing voidness on the issue of attorney's fees.  We also likewise deny Milner's request for an award of attorney's fees incurred in the appeal to this Court.

## III.  CONCLUSION

Viewing this case in accordance with the particular standard of review required for appeals of state employee grievances, we find that the hearing officer did not act contrary to law in declining to reinstate Sean Milner to his former position as Director of the Court Services Unit for Henrico County.  Therefore, we find that the circuit court erred in reversing the hearing officer's decision. Accordingly, we reverse the circuit court's ruling on the appeal of the hearing officer's decision,

and reinstate the decision of the hearing officer.  We also, consequently, reverse and vacate the

circuit court's award of attorney's fees to Milner.


<u>Reversed.</u>