COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Beales and Alston
Argued at Richmond, Virginia


JOHN CARPENTER

v.        Record No. 0560-17-2

VIRGINIA DEPARTMENT OF
 SOCIAL SERVICES

MEMORANDUM OPINION* BY
JUDGE ROSSIE D. ALSTON, JR.
APRIL 24, 2018


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Clarence N. Jenkins, Jr., Judge

Richard F. Hawkins, III (Hawkins Law Firm, PC, on briefs), for
appellant.

Sarah Flynn Robb, Assistant Attorney General (Mark R. Herring,
Attorney General; Samuel T. Towell, Deputy Attorney General;
Gregory C. Fleming, Senior Assistant Attorney General, on brief),
for appellee.


John Carpenter (appellant) appeals the denial of his petition for judicial review by the

Circuit Court for the City of Richmond (circuit court).  Appellant specifically contends that the

hearing officer acted in a manner contradictory to law by violating his constitutional right to due

process on three grounds:  (1) appellant was disciplined on charges contained in the withdrawn

Written Notice (WN), (2) the Commonwealth's Department of Social Services' (Agency) delay

in disciplining appellant for more than eight months was not properly considered as a mitigating

factor, and (3) appellant was denied the opportunity to cross-examine the witnesses responsible

for formulating the basis for the Agency's action against him.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

Appellant was employed as the Supplemental Nutrition Assistance Program (SNAP) Quality Assurance Manager for the Agency. Prior to 2013, the Agency contracted with Julie Osnes Consulting (Osnes) to "develop methods[1] to increase performance so as to qualify for the [federal] bonus pool;" this pool is divided among the top seven or eight states based on "performance criteria." Appellant subsequently worked for Osnes, implementing Osnes methods in other states to improve their chances at receiving those bonus funds. Appellant engaged in these behaviors for multiple years in secret while still employed by the Agency. An investigator from the Office of the State Inspector General (OSIG) launched an investigation of the "Quality Control and SNAP ME Review process" for "using an outside contractor to help mitigate errors" in violation of federal regulations. The OSIG investigator requested that the Agency keep the investigation confidential. The Agency's director complied with the request but provided negative feedback on appellant's subsequent performance evaluation. The Agency launched its own investigation into appellant's activities after civil investigative demands were served. Appellant was issued two notices of intent and timely responded. Subsequently, appellant was issued three Group III WN's indicating termination. WN 1 alleged that appellant's behavior constituted unethical conduct, created a serious conflict of interest, and violated the Conflicts of Interest Act. WN 2 alleged that appellant "established a consulting business without complet[ing the required forms, and] understated [his] earnings from that business on [his] 2013 and 2014 [Statements of Economic Interest]." WN 3 alleged that appellant engaged in unethical conduct. Appellant filed a grievance to challenge the Agency's action.

---

[1] These methods were used "for quality control review to lower []error rates." This is public information.

The Agency withdrew WN 3 before the hearing date. The matter was heard by a hearing officer of the Office of Employment Dispute Resolution (EDR), Department of Human Resource Management (DHRM). Regarding WN 1, the hearing officer concluded that the Agency did not prove that appellant violated the Conflict of Interest Act; "[t]hat leaves for [WN 1] the issue of whether the activity was unethical conduct."[2] The hearing officer found that

> [Appellant's] conduct in secretly engaging in the unapproved outside employment, so closely related to his Agency's business, lacked integrity, raised an inference of conflict of interest . . . , and was not approved as required by the Standards of Conduct and the Agency's handbook . . . .
>
> The issue of the unapproved outside employment is more squarely addressed in [WN 2]. Because I find that the offense the Agency has spread over two separate [WNs] is all related to [appellant's] outside employment, without the Agency's approval, the discipline should properly be considered one [WN] . . . . Because the nature of the outside employment was so closely aligned with the Agency's business, the ethical aspects of integrity, proprietary information, and inference of conflict of interest are aggravating factors. Because of these concerns, the nature of the unapproved outside employment is serious rather than trivial. [Appellant] sold his Agency experience and knowledge to other states.

Regarding WN 2, the hearing officer concluded that "the Agency failed to prove [appellant] materially misrepresented his business interest on the [Statement of Economic Interest]'s." Yet,

> [Appellant] engaged in outside employment without notification or approval, as required by the Agency and the Standards of Conduct. I also find that [appellant] kept the business secret from his Agency, and the nature of the outside employment, being so dependent on his Agency duties and specialization, justifies a

[2] The Agency's code of ethics requires employees to:

- Act with integrity in all relationships.
- Refrain from any activity or relationship that is or could be inferred as a violation of the State and Local Government Conflict of Interest Act.
- Abide by Virginia's Standards of Conduct for Employees and related regulations.

Group III [WN]. The Agency had no knowledge or control over the dissemination of its information and processes.

Addressing mitigation factors, the hearing officer noted that because he found that appellant engaged in misconduct constituting a violation of one Group III WN, he "may mitigate the [A]gency's discipline only if . . . the [A]gency's discipline exceeds the limits of reasonableness." Appellant argued that the Agency's delay in disciplining him was a mitigating factor. The hearing officer indicated that delaying discipline for an extended period of time "gives the appearance that the offense is not serious." Here, the hearing officer found that the delay did not "negate the alleged seriousness of the offense" because the OSIG was conducting an investigation. The hearing officer also recognized that the Agency did not act sooner due to the OSIG investigator's request. Further, the hearing officer noted that appellant was not prejudiced by the delay. The hearing officer then noted that "[t]ermination is the normal discipline for a Group III [WN]" and that "[s]uch decision falls within the discretion of the Agency so long as the discipline does not exceed the bounds of reasonableness." The hearing officer found that the Agency's action was "within the limits of reasonableness," declined to mitigate the discipline, and upheld the Agency's decision.

Appellant petitioned for administrative review before EDR on the same grounds. EDR found that appellant's due process rights were not violated because he was provided adequate notice. EDR also found that the hearing officer did not abuse his discretion in deciding not to mitigate the Agency's action, highlighting the hearing officer's finding that no prejudice resulted from the delay. And finally, EDR ruled that appellant had the opportunity to cross-examine those formulating the Agency's grounds for discipline; the Agency conducted its own investigation, and based on those findings, disciplined appellant. Ultimately, EDR refused to disturb the hearing officer's findings. Accordingly, the hearing officer's decision became a final hearing decision.

Appellant sought judicial review in the circuit court. Appellant asserted the same arguments presented to EDR. The circuit court denied appellant's petition for judicial review, and appellant appealed to this Court. We remanded the matter back to the circuit court "because we [could not] determine whether or not the circuit court conducted an independent review" and because appellant "did not file a transcript." The circuit court then issued an order clarifying that the question before it was whether the hearing officer's decision to uphold the Agency's determination to terminate appellant was contradictory to law. The circuit court set forth appellant's arguments. Based on the record, arguments, and briefs, the circuit court "OVERRULE[D appellant]'s arguments on the merits and [FOUND] that the decision of the [h]earing [o]fficer . . . was not contradictory to law." The circuit court then affirmed the hearing officer's decision. Having a complete record before us, we affirm the circuit court's determinations on the merits.

ANALYSIS

"The authority of a court to review state employee grievances is limited. 'The only grounds of appeal of the hearing officer's decision is 'that the determination is contradictory to law.'" Burke v. Catawba Hosp., 59 Va. App. 828, 834, 722 S.E.2d 684, 687 (2012) (quoting Va. Dep't of State Police v. Barton, 39 Va. App. 439, 445, 573 S.E.2d 319, 322 (2002)). "We review questions of law . . . *de novo*." Id. (citing Louis Latour, Inc. v. Va. Alcoholic Bev. Control Bd., 49 Va. App. 758, 766, 645 S.E.2d 318, 322 (2007)).

"In a plainly stated statutory framework, the Code of Virginia provides grievance procedures applicable to state agency employees, granting an employee a right to a hearing before a designated hearing officer when that employee has been formally disciplined." Va. Polytechnic Inst. v. Quesenberry, 277 Va. 420, 428, 674 S.E.2d 854, 858 (2009) (citing Code §§ 2.2-3001 and 2.2-3004(A)(i)).

> [A] hearing officer appointed by the [EDR] has certain powers and duties with regard to a grievance hearing, including the consideration of evidence and the determination of appropriate remedies. Code §§ 2.2-3005 and 2.2-3005.1. The hearing officer's decision, which must be in writing, shall contain findings of fact and the hearing officer's basis for making those factual findings. Code § 2.2-3005.1(C)(i) and (ii). The hearing officer's decision is final and binding "*if consistent with law and policy.*" Code § 2.2-3005.1(C)(iii).

Id. (emphasis added).

A party may request administrative review pursuant to Code § 2.2-3006(A) to determine whether the hearing officer's decision is contrary to policy. Id. at 428-29, 674 S.E.2d at 858 (citing Code § 2.2-3006(A)). A party may request judicial review pursuant to Code § 2.2-3006(B) to determine whether the decision is contrary to law. Id. at 429, 674 S.E.2d at 858. "This review procedure allows the executive branch latitude to manage and discipline executive branch employees and to develop its own policy and procedures, subject to limited legal constraints." Burke, 59 Va. App. at 834, 722 S.E.2d at 687.

Appellant contends that his constitutional right to due process was violated in three separate ways. Appellant first argues that the hearing officer's decision that appellant behaved unethically constitutes such a violation because the Agency did not provide him with adequate notice. Appellant also argues that being denied the opportunity to cross-examine the witnesses formulating the basis of the Agency's discipline against appellant constitutes a second violation.

"[W]hen considering whether the State has provided all the process that is due in depriving an individual of life, liberty, or property, we must look at both pre- and post-deprivation processes." Skinner v. Switzer, 562 U.S. 521, 540 (2011). Regarding pre-termination proceedings, the Due Process Clause requires that appellant "be given an opportunity for a hearing before he is deprived of any significant property interest." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (emphasis omitted) (quoting Boddie v.

- 6 -

Connecticut, 401 U.S. 371, 379 (1971)). This pre-termination hearing "need not be elaborate" and "should be an initial check against mistaken decisions." Id. at 545. Individuals must also be given "notice and an opportunity to respond." Id. "[T]enured public employee[s are] entitled to oral or written notice of the charges against [them], an explanation of the employer's evidence, and an opportunity to present [their] side of the story." Id. at 546 (citing Arnett v. Kennedy, 416 U.S. 134, 170-71(1974)). Regarding post-termination proceedings, "the existence of post-termination procedures is relevant to the necessary scope of the pre[-]termination procedures." Id. at 547 n.12. "[T]he Due Process Clause requires provision of a hearing 'at a meaningful time.'" Id. at 546 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

Regarding the pre-termination proceeding, the Agency provided appellant with the requisite notice; the charges against appellant were fully set forth in the issued WNs, and although WN 3 was withdrawn, WN 1 and WN 2 both addressed appellant's unethical conduct. Regarding the post-termination proceeding, the Agency initiated its own investigation and disciplined appellant based on its own findings. Consistent with the requirements of the applicable law, the proceeding before the hearing officer provided appellant the opportunity to present evidence, call witnesses, and cross-examine Agency witnesses who formulated the basis of the Agency's action.

Finally, appellant argued that the hearing officer did not properly consider the Agency's delay as a mitigating factor constituted a third violation. "Hearing officers shall have the . . . power[] and dut[y to r]eceive and consider evidence in mitigation or aggravation of any offense charged by an agency in accordance with rules established by [DHRM] pursuant to [Code] § 2.2-1202.1." Code § 2.2-3005. The Rules for Conducting Grievance Hearings require that "if the hearing officer finds that:"

> (i) the employee engaged in the behavior described in the [WN],
> (ii) the behavior constituted misconduct, and (iii) the agency's

discipline was consistent with law and policy, the agency's discipline must be upheld and may not be mitigated, unless, under the record evidence, the discipline exceeds the limits of reasonableness.

§ VI(B).

The hearing officer did consider the Agency's delay in disciplining appellant. However, the hearing officer did not find that the delay created the appearance that the charge was less than serious. The OSIG was investigating appellant and asked the Agency's director to keep that confidential. The Agency's director did so and later initiated its own investigation after the Agency and appellant were served with civil investigative demands. The hearing officer found that the Agency's action did not exceed the limits of reasonableness and chose not to mitigate.

CONCLUSION

Exercising its limited judicial review and based on the record, arguments, and briefs, the circuit court "overrule[d]" appellant's arguments on the merits and affirmed the hearing officer, finding that the decision of the hearing officer "was not contradictory to law." Appellant's due process rights were not violated. Considering pre-termination and post-termination proceedings that occurred, appellant had adequate notice and the opportunity to cross-examine the witnesses who formulated the grounds for the Agency's action against him. Further, the hearing officer complied with the statutory directive; he considered the delay and decided not to mitigate the Agency's discipline.

The hearing officer's findings were not contrary to law. Thus, we affirm the circuit court's decision.

<u>Affirmed.</u>