UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Chafin, Russell and Senior Judge Clements
Argued at Richmond, Virginia


EVELYN C. OSTERLOH

                                          MEMORANDUM OPINION[*] BY
v.       Record No. 0495-18-2                JUDGE TERESA M. CHAFIN
                                            DECEMBER 18, 2018

VIRGINIA DEPARTMENT OF
 SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
T.J. Markow, Judge

David R. Simonsen, Jr., for appellant.

W. Ryan Waddell, Assistant Attorney General (Mark R. Herring,
Attorney General; Samuel T. Towell, Deputy Attorney General;
Gregory C. Fleming, Senior Assistant Attorney General, on brief),
for appellee.


Evelyn C. Osterloh was terminated from her employment with the Virginia Department

of Social Services (the Department). She appeals from an order of the Circuit Court of the City

of Richmond ("circuit court") affirming the decisions of a hearing officer and the Department of

Employment Dispute Resolution (EDR)[1] upholding that termination. For the following reasons,

we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Effective on January 1, 2017, the Director of the Office of EDR assumed the
responsibility for administrative review of hearing officer decisions pursuant to Code
§ 2.2-3006(A). See Murphy v. Dep't of State Police, 68 Va. App. 716, 813 S.E.2d 21 (2018).

I.  BACKGROUND

Osterloh was employed as a manager by the Department.  On June 29, 2016, Osterloh was issued a "Notice of Improvement Needed" and was subsequently placed on a three-month re-evaluation plan.  See Department of Human Resource Management ("DHRM") Policy 1.40.[2]

During the three-month period, Osterloh received plan updates focusing on areas in which she still needed improvement.  However, Osterloh did not complete some of the tasks that were assigned, and she refused to sign several of the re-evaluation update documents.

---

[2] DHRM Policy 1.40 states,

> The re-evaluation process does not prevent the agency from taking disciplinary action based on the employee's poor performance or other reasons stipulated in [DHRM] Policy 1.60, Standards of Conduct, or issuing additional Improvement Needed/Substandard Performance forms.

DHRM Policy 1.40 also states that

> An employee whose performance during the re-evaluation period is documented as not improving, may be demoted within the three (3)-month period to a position in a lower Pay Band or reassigned to another position in the same Pay Band that has lower level duties if the agency identifies another position that is more suitable for the employee's performance level.  A demotion or reassignment to another position will end the re-evaluation period.

DHRM Policy 1.40 further states that

> If the agency determines that there are no alternatives to demote, reassign, or reduce the employee's duties, termination based on the unsatisfactory re-evaluation is the proper action.  The employee who receives an unsatisfactory re-evaluation will be terminated at the end of the three (3)-month re-evaluation period.

On March 14, 2017, Osterloh was notified of the Department's intent to issue formal discipline under DHRM Policy 1.60.[3] The Department issued a Group II Written Notice of disciplinary action on March 16, 2017. Osterloh's performance did not improve, and on March 24, 2017, she was again given notice that the Department intended to issue new formal discipline. On March 30, 2017, the Department issued a second Group II Written Notice which included the termination of Osterloh's employment. The notice indicated that she was provided an additional opportunity to provide the requested reporting through the March 16, 2017 Group II Written Notice, but she "has not followed through with meeting deadlines and performing the assigned tasks."

Osterloh filed a grievance to dispute her termination on April 12, 2017. A hearing officer heard argument on June 15, 2017. The DHRM supplied the hearing officer with an official policy interpretation explaining the relationship between DHRM Policies 1.40 and 1.60. The interpretation makes clear that an employee being in the re-evaluation process provided for in Policy 1.40 does not prohibit an agency from simultaneously taking disciplinary action based on the reasons stated in Policy 1.60.

The hearing officer entered his first written decision on July 5, 2017. Significantly, the hearing officer found that Osterloh's "supervisor testified consistently with the allegations in the Written Notices" and that "his testimony credibly establishes" Osterloh's alleged misconduct.

---

[3] DHRM Policy 1.60 provides that Group II offenses

> include acts of misconduct that are more serious and/or repeat nature that require formal disciplinary action. This level is appropriate for offenses that have a significant impact on business operations and/or constitute neglect of duty, insubordination, the abuse of state resources, violations of policies, procedures, or laws.

Failure to follow instructions and repeated instances of poor job performance are specifically considered Group II offenses.

Nevertheless, the hearing officer reversed Osterloh's termination based on his determination that early termination under DHRM Policy 1.60 is "irreconcilable with the three-month re-evaluation plan under [DHRM] Policy 1.40." The hearing officer also found that the Department "acted from an improper motivation." His reasoning for this finding was that there was an "absence of any other explanation for why the [Department] concurrently imposed its correction power through two punitive processes, either one of which could have resulted in an orderly termination (if supported by the evidence)." The hearing officer went on to state that "the reasonable inference is that the [Department] improperly retaliated against [Osterloh] by its disciplinary process imposed to end prematurely the re-evaluation period with termination."

Osterloh and the Department requested an administrative review of the July 5, 2017 written decision. On review, DHRM's Office of EDR determined that the hearing officer did not properly apply the official policy interpretation of DHRM Policies 1.40 and 1.60 and remanded the matter back to the hearing officer.

On September 5, 2017, the hearing officer issued a second written opinion. The hearing officer again found that the evidence established Osterloh's misconduct, noting that the Department's "assessment of [Osterloh's] poor performance appears based on [Osterloh's] actual conduct and behavior, all of which was solely within the control of" Osterloh and that "[t]he conduct as stated in the written notice occurred." The hearing officer upheld the first Group II Written Notice, but, despite his conclusion regarding Osterloh's misconduct, rescinded the second Group II Written Notice, finding that "[t]he [Department], by issuing two Group II notices for continuing poor performance with early termination, applied Policies 1.40 and 1.60 inharmoniously." The hearing officer further determined that Osterloh's unimproved performance warranted the "issuance of one Written Notice during the re-evaluation period," but

- 4 -

that DHRM's official policy interpretation did not "sanction multiple Written Notices during the [three]-month re-evaluation." He also determined that

> There is nothing to suggest that the [Department's] view of [Osterloh's] work performance was retaliatory beyond the [Department's] procedural actions to speed the termination via the disciplinary process rather than the existing re-evaluation plan.

The Department again sought administrative review of the hearing officer's decision, contending that the decision was inconsistent with DHRM Policies 1.40 and 1.60. On October 17, 2017, EDR vacated the hearing officer's second decision. Specifically, EDR concluded that the hearing officer's determination that "the agency's disciplinary process was retaliatory in this case is unsupported and must be reversed on remand."

On remand, the hearing officer entered a third and final decision on October 19, 2017. Given his prior findings of Osterloh's misconduct and the fact that EDR's most recent policy ruling vitiated the sole stated basis of his prior findings of retaliation, the hearing officer was compelled to conclude that Osterloh's termination was "due to accumulation of disciplinary action." He upheld both Group II Written Notices and her resulting termination. Osterloh appealed to the circuit court.

On January 22, 2018, the circuit court heard argument and dismissed Osterloh's appeal. Osterloh filed a motion for reconsideration. The circuit court granted the motion and again heard argument on the appeal on February 27, 2018. The circuit court once more dismissed Osterloh's appeal, upholding her termination from her position with the Department.

Osterloh now appeals the circuit court's decision to this Court. She argues that the circuit court applied the wrong standard of review in the proceedings below. Additionally, she asserts that the final order of the hearing officer "is contradictory to law because it is inconsistent with and contradictory to the guiding principle of Virginia law that the [h]earing [o]fficer acts as the

finder of fact." Finally, she contends that by reversing his own factual finding as to retaliation, that the hearing officer's final decision is not based on the hearing officer's own factual finding.

## II. ANALYSIS

As a preliminary matter, we address Osterloh's contention that the circuit court erred in failing to apply the proper standard of review.

"On appeal from a state employee grievance decision, courts are bound by the factual findings of the hearing officer and may only reverse or modify the decision if it is 'contradictory to law.'" Osburn v. Va. Dep't of Alcoholic Bev. Control, 295 Va. 10, 17 (2018) (quoting Va. Polytechnic Inst. & State Univ. v. Quesenberry, 277 Va. 420, 429 (2009)).

> "The appealing party must identify a constitutional provision, statute, regulation or judicial decision which the hearing officer's decision contradicted." [Quesenberry, 277 Va. at 429.] Questions regarding whether a decision is contradictory to law, including the meaning of any underlying statutes, are reviewed *de novo*. See id.; REVI, LLC v. Chicago Title Ins. Co., 290 Va. 203, 208, 776 S.E.2d 808, 810 (2015).

Osburn, 295 Va. at 17 (internal quotation marks omitted).

Virginia's employee grievance procedure confines the scope of review of each body that reviews a grievance after it has exhausted an agency's internal resolution steps. The General Assembly has established a "tripartite review procedure" that sets forth the following roles: (1) the hearing officer is the finder of fact and final authority on factfinding; (2) DHRM and EDR determine whether the hearing officer's ruling is in compliance with personnel policy and grievance procedure (respectively); and (3) the circuit courts determine whether the grievance determination is "contradictory to law." Va. Dep't of State Police v. Barton, 39 Va. App. 439, 445 (2002); see Code § 2.2-3006. The hearing officer's factual findings, EDR's administrative determinations of compliance with grievance procedure, and DHRM's determination of compliance with personnel policy are not subject to judicial review. Id. Therefore, the circuit

courts are given an especially narrow scope of review, and any decision of the circuit court "presents a pure question of law and is accordingly subject to *de novo* review." Warrington v. Commonwealth, 280 Va. 365, 370 (2010) (quoting Jones v. Commonwealth, 276 Va. 121, 124 (2008)).

In this case, the circuit court failed to utilize the standard of review that is mandated by the tripartite review procedure. The role of the courts in this procedure is solely to determine whether the grievance determination is "contradictory to law." Barton, 39 Va. App. at 445. The circuit court reviewed the record in order to determine whether there was sufficient evidence to support the hearing officer's decision to terminate Osterloh's employment, thus employing an improper standard of review.

> Our *de novo* review of the circuit court's decision . . . is conceptually analogous to the circuit court's review of the [hearing officer's] decision. The circuit court conducted no factfinding to which we must defer. Nor were there any discretionary calls made during the course of the circuit court's proceedings.

Reston Hosp. Ctr., LLC v. Remley, 63 Va. App. 755, 771 n.9 (2014). As this appeal presents a question of pure law requiring a *de novo* review of the hearing officer's final decision, it is unnecessary to address the circuit court's legal conclusions. Therefore, this Court will conduct an independent review of the record to determine whether the hearing officer's third and final determination was contradictory to law.

Osterloh contends that the EDR's "failure to accept the hearing officer's factual finding of unlawful retaliation as final and binding is a violation of [Code § 2.2-3005.1(C)(iii)]." Code § 2.2-3005.1(C)(iii) clearly states that "[t]he decision of the hearing officer shall . . . be final and binding if consistent with law and policy." "Pursuant to the state employee grievance procedure, the General Assembly has vested review of policy issues involved in such cases in DHRM, and

not in the courts." Passaro v. Va. Dep't of State Police, 67 Va. App. 357, 370 (2017) (citing Code § 2.2-3006).

Here, the hearing officer's opinions make clear that the sole basis for his finding retaliation was his conclusion that the Department's concurrent use of the two disciplinary processes was contrary to policy.[4] EDR appropriately reviewed the policy determination inherent in that finding and informed the hearing officer of his error. EDR stated in its October 17, 2017 written decision that

> an agency does not "elect" to manage an employee's performance under either [DHRM] Policy 1.40 or [DHRM] Policy 1.60. Both policies may be applied as appropriate and necessary to address unsatisfactory or other misconduct, and the terms of both polices are applicable to employees who have been placed on a re-evaluation plan.

Because the factual finding of retaliation was not consistent with policy, it was not final or binding. See Code § 2.2-3005.1(C)(iii).

With the sole reason for his finding of retaliation no longer viable, the hearing officer was left to determine only whether Osterloh committed the alleged misconduct and whether such misconduct supported the written notices and the ultimate sanction imposed. Given his repeated findings that Osterloh had engaged in the alleged misconduct, the hearing officer upheld both the written notices and the sanction of termination.

Ultimately, "the party appealing the hearing officer's decision properly bears the burden of identifying the law thereby contradicted." Quesenberry, 277 Va. at 429. For the reasons stated above, Osterloh has failed to demonstrate such an error. Accordingly, we hold that the

---

[4] On appeal, Osterloh argues that there are other potential reasons to conclude that the Department engaged in retaliation. The hearing officer, however, did not base his finding of retaliation on anything other than an inference flowing from the alleged policy violation.

termination decision is consistent with law and policy as required by Code § 2.2-3005.1(C)(iii), and thus, is final and binding.  Accordingly, we affirm.

Affirmed.