COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:  Judges Humphreys, Beales and O'Brien
Argued at Norfolk, Virginia


ANTONIO PASSARO, JR.

                                     OPINION BY
v.      Record No. 0328-16-1        JUDGE RANDOLPH A. BEALES
                                     FEBRUARY 21, 2017

VIRGINIA DEPARTMENT OF STATE POLICE


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Frederick B. Lowe, Judge Designate

Kevin E. Martingayle (Bischoff Martingayle, P.C., on briefs), for
appellant.

Sydney E. Rab, Senior Assistant Attorney General (Mark R. Herring,
Attorney General; Cynthia E. Hudson, Chief Deputy Attorney
General; Rhodes B. Ritenour, Deputy Attorney General, Civil
Division, on brief), for appellee.


Antonio Passaro, Jr. ("Passaro") challenges the judgment of the circuit court. The circuit court, sitting as an appellate court, affirmed the decision of the hearing officer in Passaro's employee grievance proceeding against his former employer, the Virginia Department of State Police ("VDSP"). Passaro contends that the circuit court (1) erred in finding that the decision of the hearing officer was supported by the record; (2) erred in denying Passaro's motion for reconsideration; (3) erred in "upholding the hearing officer's reliance on an expired 'Group II Written Notice' as part of the disciplinary record used to justify termination of Passaro"; (4) erred in "upholding the hearing officer's original decision that contradicted law and policy by failing to acknowledge and act upon unrebutted evidence of unlawful retaliation and abusive behavior"; (5) erred in "upholding the hearing officer's original decision that contradicted law and policy by failing to acknowledge [VDSP's] violations of General Order ADM 6.00(16)"

regarding review of transfer requests; and (6) erred in "failing to award relief to Passaro based upon [VDSP's] repeated unlawful refusal to comply with mediation provisions set forth in Code § 2.2-3000." For the following reasons, we affirm the decision of the circuit court.

## I. BACKGROUND

Passaro was employed by VDSP for approximately fifteen years. In October 2008, Passaro began working in the High Tech Crimes Unit. The High Tech Crimes Unit investigates potential computer fraud, computer trespass, computer invasion of privacy, and theft of computer services, among other crimes. Relevant to this appeal, Passaro also investigated online child exploitation cases including the possession, manufacture, and distribution of child pornography. On July 28, 2010, Passaro received a Group II Written Notice[1] for failure to follow established written policy. Beginning in September 2010, Passaro began reporting to First Sergeant Robert Holland. First Sergeant Holland began to observe that Passaro was having difficulty processing his caseload. On March 22, 2011, First Sergeant Holland counseled Passaro about his "heavy reliance" on Federal Agent Paul Wolpert of Immigration and Customs Enforcement ("ICE") and advised Passaro to handle his own investigations.

On February 21, 2012, VDSP issued to Passaro a "Notice of Improvement Needed/Substandard Performance." That notice advised Passaro, among other things, that he had failed to submit proper paperwork and documentation on multiple occasions and had failed to properly prepare for a meeting with a Commonwealth's Attorney. The improvement plan contained in that notice stated that Passaro needed to demonstrate greater autonomy and an ability to work efficiently without supervision. On February 22, 2012, Passaro and First Sergeant Holland spoke on the phone. Passaro told First Sergeant Holland that he believed that

---

[1] Group II offenses "include acts and behavior of a more severe and/or repetitive nature and are such that an additional Group II offense should normally warrant removal." VDSP General Order ADM 12.02(12)(a).

Holland had asked Passaro to sever ties with ICE. First Sergeant Holland told Passaro that was not his instruction. First Sergeant Holland then told Passaro that he did expect Passaro to work his cases from start to finish and told Passaro that his heavy reliance on ICE must cease. That same day, Passaro submitted a transfer request to another position within VDSP. On March 2, 2012, Passaro amended his transfer request to include two additional positions.

On April 6, 2012, First Sergeant Holland met with Passaro and told him that he had turned over too many of his assigned cases to be completed by Agent Wolpert. First Sergeant Holland also stated that it was Passaro's responsibility to work his own cases and to only have ICE provide assistance when necessary. First Sergeant Holland informed Passaro that Passaro should obtain search warrants and seize evidence and then send it to the VDSP's laboratory for evaluation, as opposed to the ICE laboratory.

On April 26, 2012, Passaro and Agent Wolpert conducted a "knock and talk" investigation at what was described by the hearing officer as "Mr. W.'s residence" in Chesapeake to investigate suspicious internet activity related to child pornography. On a computer found at that residence, the agents found a folder that contained "titles of images and videos that were indicative of child pornography." Passaro and Agent Wolpert informed "Mr. W." that they needed to take the computer and have it erased. Agent Wolpert took the computer to his laboratory to examine the contents of its hard drive. On May 3, 2012, ICE conducted an examination of the computer at the ICE lab and found only titles of files that seemed indicative that those files may have contained child pornography and adult pornography. ICE then removed the files, removed the file sharing software that was on Mr. W.'s computer, and ran a program to "wipe" the hard drive of the computer. Passaro retrieved the computer from Agent Wolpert on May 4, 2012. Passaro then returned the computer to Mr. W. When he did so, Passaro told Mr. W. that no prosecution would occur – without talking with the

Commonwealth's Attorney about whether one would occur and despite not having any authority to determine whether a criminal prosecution was appropriate.

Passaro wrote in his report on the "knock and talk" investigation that the titles of images and videos on the computer yielded information of evidentiary value. First Sergeant Holland had not previously been informed that Agent Wolpert would be assisting Passaro with this particular investigation. After Passaro filed his report, First Sergeant Holland developed several concerns: (1) that Passaro relinquished the seized computer to Agent Wolpert without completing the SP-165 form, (2) that the computer was returned to Mr. W. but there was no indication in writing from Passaro of what was found on the computer or if anything had been removed or deleted, and (3) that there was no court order granting Passaro the authority to destroy the evidence on the computer's hard drive. When First Sergeant Holland first asked Passaro how many images were found on the computer that day, Passaro stated he did not know because Agent Wolpert "handled that." On May 16, 2012, Passaro told First Sergeant Holland that the computer contained around 100 images of adult pornography and three titles of files that were indicative of child pornography – but no actual images of child pornography.

On July 20, 2012, Dr. Susan Waller diagnosed Passaro with post traumatic stress disorder ("PTSD") as a direct result of repetitive exposure to psychologically traumatic images of child pornography – a requirement of his job with the High Tech Crimes Unit of VDSP. Dr. Waller recommended not exposing Passaro to child pornography at work. On September 12, 2012, Dr. Waller reevaluated Passaro and came to the conclusion that Passaro was once more "fit for full duty" after having completed a leave of absence as long as he did not resume his investigations involving child pornography. Passaro nevertheless resumed working in the High Tech Crimes Unit. On November 20, 2012, Dr. Brian Wald drafted an evaluation of Passaro after subjecting him to psychological testing for PTSD. Based on that evaluation, Dr. Wald

- 4 -

concluded that Passaro "is not currently able to perform as a Special Agent in the State Police" because the High Tech Crimes Unit "is an emotional trigger for his distress and may continue to cause PTSD reactions."

On February 11, 2013, Passaro requested formal mediation of the issues related to his employment. In a February 14, 2013 letter responding to Passaro's counsel, VDSP declined to mediate with Passaro, citing an "active administrative investigation concerning Special Agent Passaro" that was underway at that time. On March 27, 2013, VDSP issued Passaro a Group II Written Notice for failing to follow instructions and/or policy related to his actions during the "knock and talk" investigation in Chesapeake. The written notice alleged:

> During the investigation of computer child pornography, you failed to properly document the seizure of evidence (custody chain), failed to record the seized computer as evidence, and relinquished the evidence to ICE Agent Wolpert without authorization or documentation. You spoke independently and prematurely with [the computer owner] that "there would be no criminal charges filed" without approval from the Commonwealth Attorney's Office. These actions constitute a violation of General Order ADM 12.02, paragraph 12 b (I); to-wit, failure to follow a supervisor's instructions, perform assigned work or otherwise comply with applicable established policy (Group II Offense).

As of the date of the issuance of that notice, Passaro had a prior active disciplinary action – a Group II Written Notice dated July 28, 2010 for failure to follow established written policy. Passaro was terminated on March 27, 2013.[2] On April 3, 2013, Passaro again requested formal mediation. On April 11, 2013, VDSP responded and again declined to mediate with Passaro, citing Passaro's termination from the State Police.

---

[2] Upon the accumulation of two active Group II Written Notices, VDSP may remove an employee. VDSP General Order ADM 12.02(12)(c). Pursuant to VDSP General Order ADM 12.02(14)(a), Group II Written Notices have a three-year active period from the date the notice was issued to the employee.

Passaro then initiated an employee grievance action, which is the subject of this appeal. After a two-day hearing, the hearing officer concluded, "The Agency has presented sufficient evidence to support the issuance of a Group II Written Notice.  [Passaro] has a prior active Group II Written Notice.  Upon the accumulation of two active Group II Written Notices, an agency may remove an employee.  Accordingly, [Passaro's] removal must be upheld."  On November 6, 2013, the administrative review opinion of the Office of Employment Dispute Resolution ("EDR") of the Department of Human Resources Management ("DHRM") concluded there was no cause to disturb the decision of the hearing officer.  On November 15, 2013, the policy ruling of DHRM concluded it had no basis to interfere with the decision of the hearing officer.

Passaro then appealed to the Circuit Court of the City of Chesapeake, and VDSP cross-appealed.  On June 9, 2014, the circuit court overruled and dismissed the entirety of VDSP's cross-appeal.  The circuit court also overruled and dismissed Passaro's assignments of error, with one exception.  The circuit court remanded the matter back to the hearing officer for "further consideration of the testimony offered by Special Agent Wolpert and factual determinations, if any, as a result.  Upon remand and further consideration as specified in this order, the hearing officer shall affirm, reverse or amend his prior ruling, as appropriate."

On remand, the hearing officer asserted that he fully considered the testimony of all witnesses, including Agent Wolpert's testimony.  On April 23, 2015, the hearing officer affirmed the original hearing decision.  On June 15, 2015, the second administrative review opinion of EDR upheld the second decision of the hearing officer.  On August 6, 2015, the second policy ruling of DHRM concluded it had no basis to interfere with the application of the reconsideration

decision of the hearing officer.  On February 5, 2016, the circuit court also upheld the decision of the hearing officer.  This appeal followed.[3]

## II.  ANALYSIS

### A.  STANDARD OF REVIEW

Pursuant to state employee grievance procedure, a party has a right to judicial appellate review of grievance hearing decisions on the grounds that the determinations were "contradictory to law."  Code § 2.2-3006(B).  The state employee grievance procedure creates a "tripartite review procedure" setting forth the following roles:  (1) the hearing officer is the finder of fact and final authority on factfinding; (2) DHRM and EDR determine whether the hearing officer's ruling is in compliance with personnel policy and grievance procedure respectively; and (3) the courts determine whether the grievance determination is "contradictory to law."  Va. Dep't of State Police v. Barton, 39 Va. App. 439, 445, 573 S.E.2d 319, 322 (2002).  Pursuant to that review procedure, the hearing officer's findings of fact and the administrative determinations of compliance with grievance procedure by EDR and personnel policy by DHRM are not subject to judicial review.  Id.

The courts are limited to ascertaining compliance with constitutional provisions, statutes, regulations, and judicial decisions.  Va. Polytechnic Inst. & State Univ. v. Quesenberry, 277 Va. 420, 429, 674 S.E.2d 854, 858 (2009).  Therefore, any determination that should properly be categorized as an issue of fact, policy, or procedure is outside the scope of judicial review.  The same standard of review applies both in the circuit court and in this Court.  Va. Dep't of Corr. v.

---

[3] On March 27, 2013, VDSP also issued Passaro a Group III Written Notice for making a false official statement, a Group III Written Notice for theft, and a Group III Written Notice for damaging state property or records.  The hearing officer rescinded all three Group III Written Notices.  Neither party appealed the hearing officer's decision to rescind those Group III Written Notices to this Court.

Compton, 47 Va. App. 202, 219, 623 S.E.2d 397, 405 (2005). Because the only issues that are actually within the scope of our review are issues of law, we review these issues *de novo*. Pound v. Dep't of Game & Inland Fisheries, 40 Va. App. 59, 64, 577 S.E.2d 533, 536 (2003). The appealing party has the burden to "identify[] the law . . . contradicted" by the hearing officer's decision. Quesenberry, 277 Va. at 429, 674 S.E.2d at 858.

### B. EVIDENTIARY SUPPORT FOR THE DECISION OF THE HEARING OFFICER

Passaro asserts in his first two assignments of error that "the ruling of the hearing officer is without sufficient support in the record." Specifically, Passaro contends that the hearing officer assigned improper weight to the testimony of Passaro's supervisor, First Sergeant Holland, without giving due consideration to the testimony of Passaro's own witness, Agent Wolpert.

Pursuant to Code § 2.2-3006(B), Passaro may only appeal the hearing officer's decision "on the grounds that the determination is contradictory to law." The statutes dealing with state employee grievances make clear that

> the hearing officer is to act as fact finder and the Director of the Department of Human Resource Management is to determine whether the hearing officer's decision is consistent with policy. In the grievance process, neither of these determinations is subject to judicial review, but only that part of the grievance determination "contradictory to law."

Barton, 39 Va. App. at 445, 573 S.E.2d at 322. Applying that standard of review, we find that the issues Passaro raises in his first two assignments of error fall outside of the scope of judicial review pursuant to Code § 2.2-3006(B).

Pursuant to established case law, the hearing officer's findings of fact are not subject to judicial review. Barton, 39 Va. App. at 445, 573 S.E.2d at 322. On appeal, however, Passaro challenges the hearing officer's decision to uphold his termination by attacking the hearing officer's findings of fact – specifically the hearing officer's determinations regarding the

- 8 -

credibility of First Sergeant Holland and Agent Wolpert. However, Passaro has failed to identify any constitutional provision, statute, regulation, or judicial decision which the hearing officer's decision contradicts. Accordingly, because, in this particular argument, Passaro has not asserted that the hearing officer's decision was "contradictory to law," this Court lacks any basis for reviewing the hearing officer's decision pursuant to Code § 2.2-3006(B).

Alternatively, Passaro argues that the hearing officer's decision was "contradictory to law" because that decision would have required Passaro to "violate the legal rights of a citizen" in order to avoid termination. In other words, Passaro asserts that, if he had acted as required by his employer, Passaro would have violated a private citizen's (Mr. W.'s) Fourth Amendment rights because "Passaro had no legal authority to 'seize'" the computer in question. However, there is simply no merit to the contention that Passaro was terminated because he refused to violate the constitutional rights of Mr. W. as part of the "knock and talk" investigation Passaro and Agent Wolpert were doing. Instead, it plainly appears from the record that Passaro's termination was predicated upon Passaro's "failure to follow a supervisor's instructions, perform assigned work or otherwise comply with applicable established policy," as detailed in the March 27, 2013 Group II Written Notice.

The hearing officer found that Passaro's termination was proper because the evidence established that Passaro failed to follow a supervisor's instructions during the "knock and talk" investigation (1) when he delegated his investigatory responsibilities to Agent Wolpert, (2) when he failed to use VDSP's laboratory to analyze the contents of Mr. W.'s computer, and (3) when he failed to file necessary paperwork. Appellant is simply not logically persuasive that his supervisors' instructions to lead his own investigations, to use *state police* laboratory resources, and to complete necessary paperwork would have *required* Passaro to violate Mr. W.'s Fourth Amendment rights. In addition, the decision of the hearing officer was in no way predicated

upon the hearing officer's interpretation of the Fourth Amendment.[4]  Therefore, we reject

Passaro's arguments from his first two assignments of error that the hearing officer's decision

was "contradictory to law."

### C.  ALLEGED EXPIRATION OF PASSARO'S PRIOR GROUP II WRITTEN NOTICE

Passaro alleges in his third assignment of error that the hearing officer erred when it

relied on an expired Group II Written Notice to justify VDSP's termination of Passaro.  Passaro

notes that his prior Group II Written Notice was issued on July 28, 2010.  Because a Group II

Written Notice expires after three years, Passaro argues that notice expired on July 28, 2013 and

thus could not be considered by the hearing officer when he upheld Passaro's termination on

September 9, 2013.

When a Group II Written Notice expires is a matter of agency policy governed by

General Orders of VDSP.  Pursuant to the state employee grievance procedure, the General

Assembly has vested review of policy issues involved in such cases in DHRM, and not in the

courts.  See Code § 2.2-3006.  In Barton, this Court determined that any dispute over the

meaning of a General Order of VDSP "is a matter of internal agency policy."  Barton, 39

Va. App. at 446, 573 S.E.2d at 323.

VDSP General Order ADM 12.02(14)(a) states, "Group II Written Notices shall have a

three year 'active' period from the date the notice was issued to the employee."  In both its

---

[4] Again, Passaro was not terminated based on an allegation that he violated the Fourth Amendment rights of a private citizen.  This fact distinguishes this matter from this Court's decision in Osburn v. Va. Dept. of Alcoholic Beverage Control, 67 Va. App. 1, 792 S.E.2d 276 (2016).  In that case, the Virginia Department of Alcoholic Beverage Control ("ABC") terminated Osburn *because* he had violated an ABC license applicant's constitutional rights during a site inspection.  Thus, this Court was permitted to determine on appeal whether the decision of the hearing officer was "contradictory to law" because the employee grievance determination necessarily involved the interpretation of Fourth Amendment jurisprudence, which is simply not the case in this matter.

November 15, 2013 and August 6, 2015 policy rulings in this matter, DHRM made the following conclusions of policy:

> the dates for consideration of active notices are based on [] the dates of issue. In this case the grievant had an active Group II Written Notice (issued on July 28, 2010) and a second active Group II Written Notice (issued March 27, 2013) that was not rescinded. The hearing date was June 20, 2013 and the decision was issued on September 9, 2013. While the July 28, 2010 notice had expired before the hearing was held and [] before the hearing decision was issued, the July 28, 2013[5] and the March 27, 2013 notices were active at the same time. Therefore, the accumulation of written notices was sufficient to uphold dismissal.

In this matter, DHRM determined as a matter of policy that a prior Group II Written Notice is "active" for the purposes of employee discipline if that prior written notice was active on the date the second such Group II Written Notice was issued. Thus, DHRM found that the accumulation of written notices was sufficient here because the July 28, 2010 notice was still active on the date of the issuance of the March 27, 2013 notice. In short, three years had not expired from the issuance of the first Group II Written Notice before the issuance of the March 27, 2013 Group II Written Notice. Furthermore, Passaro has not asserted that this policy determination is "contradictory to law." Thus, Passaro's requested review of DHRM's administrative policy determination that VDSP properly terminated him based on his accumulation of Group II Written Notices is not subject to judicial review.

D. ALLEGATIONS OF RETALIATION AND ABUSE

Passaro asserts in his fourth assignment of error that the hearing officer erred by "failing to acknowledge unrebutted evidence of unlawful retaliation and abusive behavior." The hearing

---

[5] Because there is a Group II Written Notice dated July 28, 2010 in the record, but there is no Group II Written Notice dated July 28, 2013, the Court concludes that the "July 28, 2013" date cited in this sentence of DHRM's November 15, 2013 opinion was a scrivener's error that should be "July 28, 2010."

officer's factual findings on this issue included the following: "There is insufficient evidence to support the conclusion that [VDSP] took disciplinary action against [Passaro] because of a dislike of [Passaro] rather than because of a legitimate objective of addressing [Passaro's] work performance." Again, Passaro has failed to state how this ruling was "contradictory to law." This factual determination (as well as the weight that the hearing officer assigned to the evidence presented regarding Passaro's treatment by supervisors) is outside of the scope of judicial review of this appeal from the decision of an administrative agency. See Code § 2.2-3006(B). Passaro also asserts that the behavior of Passaro's supervisors rose to the level of violations of VDSP General Order ADM 12.02.[6] In Barton, this Court determined that VDSP's General Orders are not laws for the purposes of Code § 2.2-3006(B) (formerly Code § 2.1-116.07:1) because those orders are designed by VDSP "to govern its internal policies." 39 Va. App. at 443 n.2, 573 S.E.2d at 321 n.2. Because Passaro's argument is actually premised on the theory that VDSP violated its own policy by failing to follow its own disciplinary rules and procedures, we find this assignment of error cannot be considered by this Court pursuant to Code § 2.2-3006(B).

E. PASSARO'S REQUESTS FOR TRANSFERS

In his fifth assignment of error, Passaro argues that the hearing officer contradicted law and policy by not concluding that VDSP failed to "carefully review" Passaro's transfer request pursuant to VDSP General Order ADM 6.00(16).[7] In short, Passaro's argument is premised on

---

[6] VDSP General Order ADM 12.02 is designed to "provide a comprehensive description of the types of actions that may result in removal or suspension from the Department, as well as other disciplinary measures that may be taken to correct employee behavior that does not meet the standards of the Department."

[7] The stated purpose of VDSP General Order ADM 6.00 is to "describe general eligibility requirements and procedures for assignments and transfers." Subsection (16), in relevant part, states, "Supervisors should determine eligibility requirements by carefully reviewing the request with the employee."

the theory that VDSP violated its own policy when it elected not to transfer Passaro to a new position. Again, Passaro has failed to state how the ruling by the hearing officer on this issue was "contradictory to law." At most, Passaro can assert that the hearing officer and DHRM misinterpreted VDSP General Order ADM 6.00(16) and misapplied that general order to the facts of this case. Because Passaro's argument is again premised on the theory that VDSP violated its own policy by failing to follow its own disciplinary rules and procedures regarding transfers, we find this assignment of error cannot be considered by this Court pursuant to Code § 2.2-3006(B).

### F. PASSARO'S REQUESTS FOR MEDIATION

Passaro asserts in his sixth and final assignment of error that VDSP unlawfully refused to comply with mediation provisions set forth in Code § 2.2-3000.[8] In other words, Passaro asserts that the employee grievance decisions below were "contradictory to law" because VDSP had declined to mediate Passaro's employee grievance action when he requested it. We disagree.

Our review of the relevant statutes compels this Court to conclude that there is no statutory authority in support of Passaro's argument that VDSP was *required* by law to participate in meditation when requested to do so by Passaro. As stated by EDR in its second administrative review opinion:

> The grievant argues that the agency has failed to comply with law and policy by rejecting the grievant's requests for mediation. Section 2.2-3000(B)(4) of the Code of Virginia provides that each agency shall participate in the state workplace mediation program administered by EDR pursuant to Section 2.2-1202.1. Contrary to the grievant's assertions, the agency is a participant in EDR's mediation program. Further, under its statutory directive to establish a workplace mediation program, EDR has promulgated Workplace Mediation Program Guidelines. Section II(A) of those Guidelines provides that mediation through the state workplace

---

[8] Code § 2.2-3000(B)(4) states, "To fully achieve the objectives of this chapter and to create uniformity, each agency in the executive branch of state government shall . . . [p]articipate in the mediation program."

mediation program is a voluntary process. As participation in a mediation is voluntary, EDR cannot conclude that the agency has violated its obligations under law and policy by electing not to participate in mediation with the grievant.

Certainly, VDSP is required by Code § 2.2-3000 to participate in EDR's state workplace mediation program. However, as noted by EDR in its administrative review opinion, VDSP *is* a participant in EDR's statewide mediation program and VDSP has an "agency workplace mediation coordinator" for EDR mediation.

Passaro argues that VDSP must mediate an employee grievance dispute whenever an employee such as Passaro requests mediation. He also contends that the remedy for the failure of VDSP to agree to mediation is the reversal of VDSP's termination of him. We disagree. While VDSP is required by statute to create the mechanism through which an employee may seek informal dispute resolution through EDR's mediation program, there is no language in Code § 2.2-3000 that requires VDSP to mediate this dispute with Passaro whenever he requests it. Absent a statutory requirement that a state agency must engage in informal dispute resolution with an employee whenever it is requested by the employee, Passaro cannot successfully assert the hearing officer's decision was "contradictory to law." In addition, EDR determined that, as a matter of employee grievance procedure, a decision to enter into mediation is *voluntary* – meaning that an employee such as Passaro cannot compel his employer to mediate by simply expressing a desire to mediate. It would defy any logic if – as soon as VDSP initiated an administrative investigation into an employee's conduct or even terminated an employee's services – an employee could actually forestall the agency's use of disciplinary measures, even temporarily, by then requesting mediation. In short, we reject Passaro's interpretation of Code § 2.2-3000 and find that the hearing officer's decision was not "contradictory to law."

III. CONCLUSION

Viewing this case in accordance with the particular standard of review required for administrative appeals of state employee grievances, we cannot find that the hearing officer acted "contradictory to law" in declining to reinstate Passaro to employment at the Virginia Department of State Police. Consequently, we find that the circuit court did not err in affirming the hearing officer's decision. Accordingly, we affirm the judgment of the circuit court.

<u>Affirmed.</u>