COURT OF APPEALS OF VIRGINIA

Present:    Judges Humphreys, O'Brien and AtLee
Argued at Lexington, Virginia

**UNPUBLISHED**

VIRGINIA DEPARTMENT OF CORRECTIONS

v.        Record No. 1415-19-3

WHITNEY MONTGOMERY

MEMORANDUM OPINION* BY
JUDGE ROBERT J. HUMPHREYS
MARCH 3, 2020

FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
W. Chapman Goodwin, Judge

W. Ryan Waddell, Assistant Attorney General (Mark R. Herring,
Attorney General; Samuel T. Towell, Deputy Attorney General;
Gregory C. Fleming, Senior Assistant Attorney General, on briefs),
for appellant.

Shelly R. James (John Elledge & Associates, on brief), for appellee.

On October 10, 2017, the Virginia Department of Corrections ("VDOC") terminated the

employment of Whitney Montgomery ("Montgomery") based on a finding that she violated the

fraternization policy found in VDOC Operating Procedure 135.2. On March 16, 2018, a hearing

officer upheld VDOC's issuance of a Group III Notice and its subsequent termination of

Montgomery's employment with VDOC. On May 18, 2018, the Office of Equal Employment

and Dispute Resolution ("EEDR") at the Department of Human Resource Management

("DHRM") upheld the hearing officer's decision in its administrative review of the case.

Montgomery appealed to the Circuit Court of Augusta County ("circuit court"), which reversed

Montgomery's termination and awarded her $17,000 in attorney fees pursuant to Code

§ 2.2-3006.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On appeal, VDOC assigns the following two errors:

  I. The circuit court erred in ruling that the hearing officer's final decision was contradictory to Va. Code Ann. § 2.2-3005(C)(6) because the weight a hearing officer affords to mitigating evidence is a factual determination, based on state policy that is not subject to judicial review under the VSGP.

  II. The circuit court further erred in awarding Montgomery $17,000.00 in attorney fees because the hearing officer's final decision was not contradictory to law.  Alternatively, and assuming arguendo that the circuit court properly overturned Montgomery's termination, the attorney fees awarded were not reasonable in light of the seven factors articulated in Lambert v. Sea Oats Condo Ass'n, Inc., 798 S.E.2d 177, 182 (Va. 2017).

## I.  BACKGROUND

Montgomery worked as a corrections officer at a VDOC facility for approximately twenty years, during which time she served as "a loyal employee who worked well for the Agency."  Prior to the disciplinary action at issue in this case, there was no evidence of any prior disciplinary action against her.

During her employment, Montgomery had a public Facebook social media account that was set up by her eighteen-year-old daughter.  Montgomery and her family used the account to buy, sell, and trade items for the farm they owned and operated.  Of Montgomery's some 599 Facebook "friends," about 75% related to Montgomery's business and were not close personal friends.  Montgomery's daughter had permission to access the account as well, and she sometimes did so by using Montgomery's cell phone.  On occasion, Montgomery's daughter "has accepted" friend requests to Montgomery's account.[1]  Montgomery's husband and adult son also had access to the Facebook account.

---

[1] A Facebook "friend" is essentially a contact to whom someone with access to a Facebook profile has given general permission to access items on a particular individual's Facebook page, either in an application or on the web.  Permission gives "friends" access to items such as photos, message posts, and comments to the posts of others.  A Facebook "like" is

On September 11, 2017, VDOC discovered that Montgomery's account was Facebook friends with a former inmate named Zachary Gunning ("Gunning"). Montgomery knew Gunning because he had been incarcerated at the VDOC facility where she worked. Although Gunning had been released from the VDOC facility, he was on active probation until May 2, 2019. About 95% of offenders who leave the facility are immediately placed on probation. On August 9, 2017, Gunning posted on his Facebook account, "Passed my urine screen this morning so getting back to work Monday with [Company], a place I can honestly grow and probably work there for the next 20 years." About forty-two people liked the post, including Montgomery's profile.

When VDOC interviewed Montgomery during its investigation, she admitted that she knew that Gunning had been incarcerated at the VDOC facility where she worked. However, she stated that she was unaware Gunning was still on probation. In order to prevent any obstruction to the investigation, Montgomery did not remove Gunning as a Facebook friend until she received VDOC's permission. On September 15, 2017, after being interviewed, Montgomery provided a written statement that explained that she "did not have any idea" that Gunning was on probation. She also stated that she did not remember liking his post. The VDOC report of investigation reflected, "Montgomery said that early on, her daughter had basically managed her Facebook account, and she wasn't sure whether she, or her daughter, had accepted Gunning's friend request or whether the request had been generated from her account to his." On October 10, 2017, VDOC issued Montgomery a Group III written notice of disciplinary action stating that Montgomery was terminated for fraternization.

generated when someone who has access to a Facebook page clicks on a thumbs-up icon below a post. It is basically a method of signifying approval for the message content or photo without expressly commenting on it.

- 3 -

Montgomery submitted an employee grievance, asking for reinstatement, lost wages and benefits, and reasonable attorney fees. After a hearing on January 23, 2018, a hearing officer upheld Montgomery's termination. Because Operating Procedure 135.2 defined "fraternization" as "association with offenders . . . that extends to unacceptable, unprofessional, and prohibited behavior," the hearing officer found that "[b]y linking her Facebook account with [Gunning's] Facebook account and by liking one of his posts, [Montgomery] associated with [Gunning]." Because the contact was not related to her work, Montgomery engaged in a non-professional communication and thereby fraternized with Gunning. The hearing officer also explained that Montgomery bore the burden of proof to show her defenses. The hearing officer categorized Montgomery's argument that her daughter may have accepted Gunning's friend request and liked his post as an affirmative defense, stating,

> Asserting that her Daughter may have connected with the Probationer is not the same as proving her Daughter was the one who connected with the Probationer. While it may have been the case that the Daughter connected with the Probationer, it may also have been the case that Grievant did so, which is consistent with the Agency's assertion.

The hearing officer also explained that Montgomery should have recognized the high risk that Gunning was on probation and that Montgomery could have found out about Gunning's status through the VACORIS system.

In determining aggravating or mitigating circumstances, the hearing officer stated that a level of discipline that did not include removal could have adequately addressed Montgomery's behavior, but "[o]nce the Agency[] meets its burden of proof . . . the Hearing Officer is required to defer to the Agency's judgment as to the level of disciplinary action even if the Agency's decision is unwise." The hearing officer found that according to agency rules, it could only mitigate the agency's discipline if the "discipline exceeds the limits of reasonableness." After

- 4 -

referencing some examples of mitigating factors, the hearing officer found that there were no mitigating circumstances.

On March 30, 2018, Montgomery requested administrative review by DHRM. On May 18, 2018, EEDR found "no basis to disturb the decision of the hearing officer." EEDR found that the evidence was sufficient to support the hearing officer's finding that Montgomery engaged in misconduct in the form of fraternization. Montgomery appealed to the circuit court.

On October 11, 2018, the circuit court issued a letter opinion reversing the hearing officer's decision based on a failure to "'consider evidence in mitigation' or, frankly, make any real attempt to do so," as required by Code § 2.2-3005. The circuit court criticized the hearing officer's conclusion that Montgomery, rather than her daughter, linked her Facebook account with Gunning and liked his post, stating that the conclusion was "contrary to the weight of [the hearing officer's] factual findings." In interpreting Code § 2.2-3005, the circuit court emphasized that the statute requires a hearing officer both to receive and to consider evidence in mitigation or aggravation, but instead the hearing officer received evidence and made findings contrary to the evidence it received. The circuit court held, "where the record shows that a Hearing Officer has engaged in mere blanket deference to an agency's decision—the officer has failed to comply with his statutory duties." The circuit court also noted that the hearing officer improperly shifted the burden of proof to Montgomery. The circuit court found that Montgomery had "more than substantially prevailed on the merits" and ordered that she recover reasonable attorney fees.

In response to the circuit court's letter opinion, the parties disputed what amount of attorney fees would be reasonable. On June 25, 2019, the circuit court issued a letter opinion addressing the amount of attorney fees. In its discussion of the grievance hearing, the circuit court found that it was bound by DHRM's maximum award of $131 per hour. However, the

circuit court did not award any attorney fees for the grievance hearing because it found that Montgomery's attorney was paid a flat fee of $5,000, but this fee could not be converted into an hourly rate. The circuit court found that it was not limited by DHRM rules in awarding attorney fees for the appeal. Instead, it held that it must consider seven common law factors in order to determine reasonableness. The circuit court awarded $17,000 in attorney fees for the appeal.

On August 15, 2019, the circuit court entered a final order incorporating the October 11, 2018 and June 25, 2019 letter opinions. The circuit court reversed Montgomery's termination and awarded her $17,000 in attorney fees for the reasons stated in the letter opinions. VDOC now appeals to this Court.

## II. ANALYSIS

### A. Standard of Review

State employee grievances follow a "tripartite review" procedure. Va. Dep't of State Police v. Barton, 39 Va. App. 439, 445 (2002). The hearing officer acts as the finder-of-fact; then, the Director of the DHRM determines if the "hearing officer's decision is consistent with policy." Id.; see also Code § 2.2-3005.1(C) ("The decision of the hearing officer shall . . . be final and binding if consistent with law and policy."). "[N]either of these determinations is subject to judicial review, but only that part of the grievance determination 'contradictory to law.'" Barton, 39 Va. App. at 445. Whether EEDR and DHRM complied with grievance procedure and personnel policy, respectively, "[is] not subject to judicial review." Passaro v. Va. Dep't of State Police, 67 Va. App. 357, 367 (2017). "Therefore, any determination that should properly be categorized as an issue of fact, policy, or procedure is outside the scope of judicial review."[2] Id.

---

[2] We recognize that one might logically expect that VDOC would actually encourage its employees to voice support for the rehabilitative efforts of former inmates rather than punish them for it. Nevertheless, for the reasons stated, neither the interpretation of an agency's

"On appeal from a state employee grievance decision, courts are bound by the factual findings of the hearing officer and may only reverse or modify the decision if it is 'contradictory to law.'" Osburn v. Va. Dep't of Alcoholic Beverage Control, 295 Va. 10, 17 (2018) (quoting Va. Polytechnic Inst. & State Univ. v. Quesenberry, 277 Va. 420, 429 (2009)). "[W]hether a decision is contradictory to law, including the meaning of any underlying statutes, [is] reviewed de novo." Id. The burden is on the party appealing the hearing officer's decision to identify a "constitutional provision, statute, regulation or judicial decision which the [hearing officer's] decision contradicted." Id. (alteration in original) (quoting Tatum v. Va. Dept. of Agric., 41 Va. App. 110, 122 (2003)). In reviewing the circuit court's reversal of the hearing officer's decision, this Court must "determine whether the circuit court followed the correct standard of review and whether it reached the correct legal conclusion." Tatum, 41 Va. App. at 122.

### B. Propriety of the Hearing Officer's Final Decision

VDOC argues that the circuit court erred in reversing the hearing officer's decision as a violation of Code § 2.2-3005(C)(6). This section of the Virginia State Grievance Procedure ("VSGP") sets forth the powers and duties of hearing officers. See Code § 2.2-3005(C). One of these powers and duties is to "[r]eceive and consider evidence in mitigation or aggravation of any offense charged by an agency in accordance with rules established by the Department of Human Resource Management pursuant to § 2.2-1202.1." Code § 2.2-3005(C)(6).

Here, the hearing officer complied with the duty to receive and consider evidence in mitigation of the fraternization offense. The circuit court's finding that although the hearing officer received the evidence, it did not comply with its duty to consider the evidence, is misguided. The hearing officer received evidence that Montgomery served as a loyal employee

employment policies nor even whether an agency adheres to its own employment policies is subject to judicial review.

- 7 -

during her twenty years as a corrections officer. The hearing officer's decision clearly referenced evidence of Montgomery's positive job performance history, stating, "[Montgomery] received an Exceeds Contributor rating on a recent performance evaluation." Because the hearing officer clearly received and referenced mitigating evidence, it considered such evidence. However, in finding no mitigating circumstances, the hearing officer presumably did not find such evidence convincing enough to decrease the level of discipline. See Robinson v. Commonwealth, 70 Va. App. 509, 513 (2019) (stating that it is the "responsibility of the trier of fact fairly . . . to weigh the evidence" (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979))). Thus, the circuit court erred in finding a violation of Code § 2.2-3005(C)(6).

The circuit court properly noted that the hearing officer engaged in improper burden shifting. "Where an agency removes or dismisses an employee for misconduct, . . . the agency is required to prove 'by a preponderance of the evidence that the action was warranted and appropriate under the circumstances.'" Tatum, 41 Va. App. at 122-23 (quoting Grievance Procedure Manual § 5.8(2)); see also In re Phillips, 296 Va. 433, 445-46 (2018) ("[A]s a general rule, the burden of proof in civil matters is 'by a preponderance of evidence.'" (quoting RF&P Corp. v. Little, 247 Va. 309, 318 (1994))); accord Westmoreland Coal Co. v. Campbell, 7 Va. App. 217, 222 (1988) ("In the paradigm civil case, there is no special burden of production (the proponent of the issue simply must produce evidence sufficient to support a finding on that issue), and the burden of persuasion is proof by a preponderance of the evidence."). Thus, in this type of proceeding, VDOC had the burden of proof by a preponderance of the evidence to persuade the hearing officer that Montgomery engaged in misconduct. The hearing officer improperly shifted this burden by categorizing Montgomery's argument that her daughter may have accepted Gunning's friend request and liked his post as an "affirmative defense" and noted

- 8 -

that "[a]sserting that her Daughter may have connected with the Probationer is not the same as proving her Daughter was the one who connected with the Probationer."

However, given the statutory limitations on judicial review of agency policies and employment decisions in such cases, the hearing officer's improper burden shifting in this case amounts to harmless error. Even viewing the record utilizing the correct burden, VDOC presented sufficient uncontradicted evidence to satisfy the preponderance of the evidence standard. VDOC presented circumstantial evidence from which the hearing officer as factfinder could reasonably infer that Montgomery engaged in conduct that violated VDOC's policy prohibiting contact with former inmates by showing that her profile was linked to, and communicated with, Gunning's profile, and Montgomery did not deny engaging in the prohibited conduct.[3] Montgomery only stated in her defense that she did not remember liking the post and that she was unsure whether she had accepted Gunning's friend request. For these reasons, the circuit court erred in reversing VDOC's decision to terminate Montgomery.

### C.  Award of Attorney Fees

We review the reasonableness of an attorney fee award for abuse of discretion. See Lambert v. Sea Oats Condo. Ass'n, Inc., 293 Va. 245, 252 (2017). Under the VSGP, "[t]he court shall award reasonable attorney[] fees and costs to the employee if the employee substantially prevails on the merits" of an appeal to the circuit court. Code § 2.2-3006. Here, the circuit court abused its discretion by awarding $17,000 in attorney fees because, as explained above, it should not have found that Montgomery substantially prevailed on the merits. Therefore, the circuit court erred in holding that Montgomery was entitled to attorney fees under Code § 2.2-3006.

---

[3] Montgomery has not asserted any constitutional or statutory issue with respect to VDOC's policy regarding fraternization, and therefore, we must defer entirely to the agency's interpretation of its policy.

For these reasons, we reverse the judgment below and reinstate the decision of the agency.

<u>Reversed and final judgment.</u>