COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, O'Brien and Raphael
Argued at Lexington, Virginia


VIRGINIA DEPARTMENT OF CORRECTIONS

v.        Record No. 0987-21-3

RICHARD BISHOP

OPINION BY
JUDGE ROBERT J. HUMPHREYS
MAY 24, 2022


FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
Richard C. Patterson, Judge

W. Ryan Waddell (Jimmy F. Robinson, Jr.; Ogletree, Deakins, Nash,
Smoak & Stewart, P.C., on briefs), for appellant.

Hilary K. Johnson (Hilary K. Johnson, P.C., on brief), for appellee.


The Virginia Department of Corrections ("VDOC") terminated Richard Bishop for

failing to report information about a potential relationship between a supervisor and subordinate.

Bishop appealed his termination to a hearing officer, who upheld the decision. On appeal, the

Circuit Court of Tazewell County found that the hearing officer's decision was contradictory to

VDOC's agency policy and reversed it. VDOC argues that the circuit court erred in reversing

the hearing officer's decision because the determination was not contrary to law and the circuit

court did not have authority to decide whether the termination violated the Department's internal

policies.

## I.  BACKGROUND

As will be discussed later, the "tripartite review" procedure for state employee grievances

makes the hearing officer the finder of fact and final authority on factfinding, and her findings of

fact are not subject to judicial review. *See Passaro v. Va. Dep't of State Police*, 67 Va. App.

357, 367 (2017). Therefore, this Court is bound by the hearing officer's factual determinations

as recorded in her written report. *Morris v. George Mason Univ.*, 74 Va. App. 531, 536 n.1 (2022) (quoting *Taylor v. Va. Alcoholic Beverage Control Auth.*, 70 Va. App. 237, 246 (2019)).

Bishop was a "ranking major" at Pocahontas State Correctional Center ("the Center") and had been employed there for twenty-three years at the time he was terminated. In March of 2019, Bishop and his secretary had a conversation about a recently promoted female employee, "Ms. B." Bishop and his secretary "were discussing that Ms. B had been promoted to a job" and, as a result, Ms. B was acting "entitled." Ms. B was Mr. A's subordinate. The secretary and Bishop had the following exchange:

> Secretary: "She *does* feel entitled."
> Bishop: "Why would that be?"
> Secretary: "Because of her (Ms. B) and Mr. A."
> Bishop: "What?"
> Secretary: "They are having a relationship. She (Ms. B) told me
> they were having a relationship, but it wasn't sexual in nature."
> Bishop: "What does that even mean?"

Although Bishop's secretary alleged that she and Bishop had several other conversations about Ms. B and Mr. A, the hearing officer did not credit those alleged conversations because she found his secretary's accounts to be "rather incredible."[1]

Eventually, two other employees at the center suspected that Mr. A and Ms. B were in a romantic relationship, and they reported their suspicions to the warden, who began an

---

[1] VDOC's factual summary on brief is misleading. On brief, VDOC states as fact that Bishop asked his secretary what a "relationship" between Mr. A and Ms. B meant and his secretary "told him it meant 'giving blow jobs.'" The hearing officer was unpersuaded that this statement was credible. As noted above, we are bound by the hearing officer's factual findings. The hearing officer found only one short conversation between Bishop and his secretary—the one transcribed above wherein Bishop's secretary says the relationship "wasn't sexual in nature"—to have happened. The hearing officer's report states, "[Bishop], as previously reported, was very adamant that he had only one short conversation with Secretary regarding Mr. A and Ms. B. Indeed, the subsequent conversations and text messages [alleged by his secretary] *seem rather incredible*." (Emphasis added). VDOC's brief misleadingly recounted his secretary's alleged statement regarding "blow jobs" as if it was a *bona fide* fact, not an unsupported allegation that the hearing officer refused to credit.

investigation.[2]  Bishop was subsequently placed on pre-disciplinary leave for failing to report the alleged relationship.  A series of meetings and due process procedures occurred in the following weeks, none of which are relevant to this appeal.[3]  VDOC classifies offenses as Group I, Group II, or Group III, with Group I offenses being the least severe and Group III being the most severe.  Bishop was ultimately terminated for committing a Group III violation of VDOC policies and was subsequently terminated.  He challenged his termination pursuant to state employee grievance procedure.  *See* Code § 2.2-3003.

At a grievance hearing, Bishop testified that he made no report about a relationship between Ms. B and Mr. A because he believed it to be mere gossip and "no facts."  He believed the alleged "information" was just his secretary's "feeling"; however, Bishop admitted that if someone told him "I *feel* there is an officer bringing drugs into the prison," he would turn that information over to an investigator.  The hearing officer found this analogy "most telling" regarding whether Bishop knew he was required to report what his secretary had told him.

Bishop also testified that after he was terminated, he contacted the human resources department for state employees and was told that he was correct for not reporting gossip because he could have been liable for making a false claim.  Bishop did not present any evidence to corroborate the purported conversation, and the hearing officer did not give it much weight.  Bishop's attorney argued at the hearing that if Bishop had reported the alleged relationship—which he did not truly believe was happening—based on a rumor, he could have been guilty of creating a hostile work environment or workplace harassment.

---

[2] The record does not indicate whether the allegation that Mr. A and Ms. B were in a relationship was ultimately true or false.

[3] Bishop made several due process claims and one disparate treatment claim in the circuit court.  None of those claims are before us on appeal.

- 3 -

On November 27, 2019, the hearing officer issued a written decision upholding Bishop's termination. The hearing officer found that Bishop had knowledge, "however minimal, that implicated Mr. A and Ms. B were in a relationship" and that he—as a ranking major who taught classes on VDOC's personnel policies—knew or should have known that he had a duty to report the alleged relationship. Ultimately, Bishop was found to have violated the VDOC's policy by failing to report a relationship between a subordinate and a superior.[4]

The hearing officer quoted portions of two VDOC policies that she determined Bishop had violated. First, VDOC's Standards of Ethics and Conflict of Interest Operating Procedure 135.3(IV)(H)(2)(a) stated, "Supervisors are prohibited from dating or engaging in personal romantic or sexual relationships with subordinates." Second, the Standards of Conduct Operating Procedure 135.1(V)(A)(3) stated, "Employees have a duty to promptly report to their supervisors, other management officials, or Human Resource Officer any inappropriate conduct or behavior they are subject to, become aware of, or observe."

It is worth noting that VDOC's Standards of Ethics and Conflict of Interest Operating Procedure, quoted above, prohibits both (1) personal romantic and (2) personal sexual relationships between supervisors and subordinates. The transcription of the conversation between Bishop and his secretary explicitly states that the alleged relationship was not sexual and is otherwise silent as to the nature of the "relationship." From this statement, the hearing officer determined that Bishop had at least some knowledge that Mr. A and Ms. B may have been in a prohibited relationship.

Code § 2.2-3006, which governs review of hearing decisions regarding state employees, provides two distinct and different avenues for appeal following a hearing decision. First, an

---

[4] The hearing officer found that Bishop's offense should have only been considered a Group II offense due to mitigating circumstances, but she determined that termination was still appropriate because the incident was Bishop's second Group II offense within three years.

aggrieved employee can request review from the Director of the Department of Human Resource Management ("DHRM"). *See* Code § 2.2-3006(A). Under this statute, administrative review of the hearing decision by DHRM is limited to determining whether the hearing decision is consistent with policy. *See id.* Second, the aggrieved employee can appeal the hearing decision to a circuit court on the grounds that the hearing officer's determination "is contradictory to law." *See* Code § 2.2-3006(B). There is no prohibition against filing both an administrative and a judicial appeal simultaneously.

The record indicates that Bishop only filed an appeal in the circuit court. Following a hearing, the circuit court overturned the hearing officer's decision, finding that it was contradictory to law. The circuit court also ordered that Bishop receive attorneys' fees and costs.

The circuit court said the following in announcing its judgment:

> Bishop contends that he did not violate any standards of conduct. Specifically, he was informed by his secretary of a rumor about other [V]DOC employees. He sets forth that he did not report the rumor and that failure to report a rumor was the basis of his termination. It is Bishop's contention that had he reported a mere rumor[,] he could have created liability under Title VII for discrimination. *See Evangeline J. Parker v. Reema Consulting Servs., Inc.*, [915 F.3d 297 (4th Cir. 2019)]. Specifically, in the *Parker* case, the court held that a false rumor about a woman "sleeping" her way to a promotion can give rise to a hostile work claim. *Id.* [at 303-04].

The circuit court stated that, "[R]eporting mere gossip, without facts, of an inappropriate

sexual relationship clearly can have Title VII discrimination implications."[5]  Despite these

_____

[5] Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).

Bishop argued in the circuit court that his termination was contrary to law.  He contended that if he had reported the uncorroborated information his secretary mentioned, VDOC could have faced liability for sex-based discrimination because Bishop did not believe the rumor that Ms. B was in a relationship with Mr. A to be true.  He cited *Parker*, 915 F.3d 297, in support of his argument.

In that case*,* a female employee, Parker, was promoted six times by her employer in two years.  *Id.* at 300.  Two weeks after her most recent promotion, in which she was made a manager, Parker learned that "certain male employees were circulating within [the company]" a false rumor that she was engaging in a sexual relationship with a higher-ranking manager in order to obtain her management promotion.  *See id.*  The rumor was started by another employee who had begun working at Reema at the same time as Parker and in the same position.  *Id.*  When Parker was promoted to management, she became a superior, and her former peer became jealous, so he began the false rumor, which spread through the company.  *Id.*  As a result, Parker was treated with "open resentment and disrespect" from others in the company, including employees that she was responsible for supervising.  *Id.*  Parker sued Reema on multiple counts, one of which was a hostile work environment claim for discrimination because of sex, in violation of 42 U.S.C. § 2000e-2.  *Id.* at 301.  The district court dismissed all counts of Parker's lawsuit for failure to state a claim, holding that Parker's complaint as to the establishment and circulation of the false rumor was not based on her gender but upon her alleged conduct.  *Id.* at 301-02.

On appeal, the Fourth Circuit reversed the district court, stating,

> [Parker] plausibly invokes a deeply rooted perception—one that unfortunately still persists—that generally women, not men, use sex to achieve success.  And with this double standard, women, but not men, are susceptible to being labelled as "sluts" or worse, prostitutes selling their bodies for gain. . . .
>
> The complaint not only invokes by inference this sex stereotype, it also explicitly alleges that males in the [Reema] workplace started and circulated the false rumor about Parker . . . .
>
> In short, because "traditional negative stereotypes regarding the relationship between the advancement of women in the workplace and their sexual behavior stubbornly persist in our society," and "these stereotypes may cause superiors and coworkers to treat women in the workplace differently from men," it is plausibly alleged that Parker suffered harassment because she was a woman.

statements regarding potential liability under Title VII, the circuit court ultimately based its

reversal on its interpretation of VDOC's Standards of Ethics and Conflict of Interest Operating

Procedure, not on the federal law.  The opinion stated,

> [T]he court can only reverse or modify the hearing officer's
> decision if it is "contradictory to law."  *See* [*Va. Dep't of State
> Police v.*] *Barton*[,] [39 Va. App. 439,] 445 [(2002)]. . . .  "Law,"
> when used in this context is limited to "constitutional provisions,
> statutes, regulations, or judicial decisions . . . ."  *Id.* [at 446].
>
> Here, the [h]earing [o]fficer made a determination that Bishop
> failed to report inappropriate conduct or behavior of which he
> became aware.  However, the [h]earing [o]fficer also cited that
> [sic] the inappropriate conduct was defined as "supervisors
> . . . dating or engaging in personal romantic or sexual relationships
> with subordinates." . . .  This is a misapplication of the accepted
> legal principal [sic] and regulation as defined by the Standards of
> Ethics & Conflict of Interest [Operating Procedure
> 135.3(IV)(H)(2)(a)].  As such, the Court finds that the [h]earing
> [o]fficer's decision was not consistent with law as required by
> [Code § 2.2-3006]. . . .  Accordingly, the [c]ourt [overturns] the
> [h]earing [o]fficer's final decision.

(Citation omitted).  The circuit court also awarded $9,870 in attorney fees to Bishop.  VDOC

timely appealed the circuit court's decision to this Court.

---

> Thus, the dichotomy that [Reema], as well as the district court,
> purports to create between harassment "based on gender" and
> harassment based on "conduct" is not meaningful in this case
> because the *conduct* is also alleged to be gender-based.  We
> conclude that, in overlooking this, the district court erred.

*Id.* at 303-04 (citations omitted) (quoting *Spain v. Gallegos*, 26 F.3d 439, 448 (3d Cir.
1994)).

## II. ANALYSIS

### A. Standard of Review

Chapter 30 of Title § 2.2 grants employees the right to judicial review of a grievance hearing decision on the grounds that the hearing officer's decision was "contradictory to law." Code § 2.2-3006(B).[6]

> The state employee grievance procedure creates a "tripartite review procedure" setting forth the following roles: (1) the hearing officer is the finder of fact and final authority of factfinding; (2) DHRM and EDR [Employment Dispute Resolution] determine whether the hearing officer's ruling is in compliance with personnel policy and grievance procedure respectively, and (3) the courts determine whether the grievance determination is "contradictory to law."

*Passaro*, 67 Va. App. at 367. "Under this framework, in an appeal of a grievance proceeding, a reviewing court, whether it is a circuit or appellate court, may reverse or modify the decision only if it is 'contradictory to law.'" *Morris*, 74 Va. App. at 538 (quoting *Osburn v. Va. Dep't of Alcoholic Beverage Control*, 295 Va. 10, 17 (2018)). Thus, the party that appeals the hearing officer's decision to the circuit court bears the burden of specifying first, how that decision was contradictory to law, and second, what law was thereby contradicted. *See Tatum v. Va. Dep't of Agric. & Consumer Servs.*, 41 Va. App. 110, 122 (2003).

"The General Assembly has articulated a very narrow standard of review to be applied by the circuit court in such appeals." *Va. Polytechnic Inst. & State Univ. v. Quesenberry*, 277 Va. 420, 429 (2009). Thus, on appeal, this Court is tasked with determining, *de novo*, whether the circuit court followed the correct standard of review and whether it reached the correct legal conclusion. *See Tatum*, 41 Va. App. at 122; *see also Morris*, 74 Va. App. at 538-39.

---

[6] Bishop argued on brief and at oral argument that this Court reviews grievance hearings for an abuse of discretion by the circuit court. He provides no legal authority for his contention.

## B. Whether the Circuit Court's Reversal Was Erroneous

The circuit court acknowledged that the only permissible grounds for reversing the hearing officer's decision were if the decision contradicted a constitutional provision, statute, regulation, or judicial decision. Bishop does not argue on brief or assign cross-error that the hearing officer's decision was contrary to Title VII. Despite correctly reciting the standard, the circuit court proceeded to hold that the hearing officer had contradicted the law by misapplying VDOC's Standards of Ethics and Conflict of Interest Operating Procedure, which was an internal policy. The statutes that govern state employee grievances make it clear that whether the hearing officer's decision was consistent with policy is definitively not subject to judicial review. Code § 2.2-3006(A) states that DHRM reviews hearing decisions to determine whether the hearing decision was consistent with its policies. Conversely, Code § 2.2-3006(B) mandates that parties may only appeal grievance hearing decisions to the circuit court "on the grounds that the determination is contradictory to *law*." (Emphasis added).

The circuit court's holding in this case directly contradicts the Virginia Supreme Court's holding in *Va. Polytechnic Inst. v. Quesenberry*. In *Quesenberry*, the Court interpreted the phrase "contradictory to law" as found in Code § 2.2-3006(B) as limiting judicial review to ascertaining compliance with constitutional provisions, statutes, regulations, and judicial decisions. *See* 277 Va. at 429. Additionally, this Court has previously held that agency policies are not synonymous with law under Code § 2.2-3006. In *Va. Dep't of State Police v. Barton*, a state trooper was disciplined for violating portions of the Virginia State Police Agency's internal policies of operation, and he appealed the hearing officer's decision to the circuit court. 39 Va. App. at 442. The circuit court reversed the hearing officer's decision but did not state a reason for the reversal. *Id.* at 444. On appeal, this Court reversed the circuit court's decision

because the circuit court had failed to find that the hearing officer's decision was contradictory to law. *Id.* at 448. This Court explained its reasoning, stating,

> In challenging the hearing officer's decision, Barton fails to identify any constitutional provision, statute, regulation or judicial decision which the decision contradicts. He thus fails to identify any "law" to which the hearing officer's decision is contradictory. "Law" is the "aggregate of legislation, judicial precedents and accepted legal principles." *Black's Law Dictionary* 889 (7th ed. 1999).
>
> Barton only identifies a conflict in interpretation of a policy established by a state agency . . . . *Interpretation of state agency policy is itself a matter of policy, absent a statutory enactment to the contrary, and not a matter of law*. While Barton contends his conduct brought the investigation to a logical conclusion under General Order 25, any dispute over the meaning of that directive is a matter of internal agency policy.
>
> The General Assembly has clearly vested review of policy issues involved in employee grievances in the Department of Human Resource Management, and not in the courts.

*Id.* at 446 (emphasis added).

Here, the circuit court held that the hearing officer's decision contradicted VDOC's internal Standards of Ethics and Conflict of Interest Operating Procedure, which is the type of policy review that *Barton* and its progeny plainly prohibit courts from conducting. *See Passaro*, 67 Va. App. at 370 ("Pursuant to the state employee grievance procedure, the General Assembly has vested review of policy issues involved in such cases in DHRM, and not in the courts."). The hearing officer determined that Bishop had a duty to promptly report any inappropriate conduct or behavior that he became aware of under VDOC's policy. The circuit court characterized VDOC's agency policy as an accepted legal principle, stating, "[t]his is a misapplication of the accepted legal principal [sic] and regulation as defined by the Standards of Ethics & Conflict of Interest Operating Procedure"; however, calling an agency policy a "legal principle and regulation" does not make it so. The circuit court ultimately disagreed with the hearing officer's interpretation of "inappropriate romantic conduct," which is the sort of policy

- 10 -

review that may only be performed by DHRM. *See* Code § 2.2-3006(A); *see also Barton*, 39 Va. App. at 446. Because VDOC's internal agency policy is not a constitutional provision, statute, regulation, or a judicial decision, the circuit court's holding that the hearing officer misapplied the operating procedures was outside the scope of that court's statutorily granted authority to review hearing decisions. *See* Code § 2.2-3006(B).

Although the circuit court's letter opinion is plainly sympathetic to Bishop's Title VII argument, the circuit court did not decide whether Bishop's termination contradicted Title VII. While the Fourth Circuit's decision in *Parker* raises the possibility that supervisory actions based upon rumor and innuendo may support Title VII liability, the record here is not sufficiently developed that a determination can be made that VDOC's policy as applied here necessarily conflicts with Title VII, and Bishop makes no argument in this Court that the policy in question violates Title VII.[7]

### C. Attorney Fees

VDOC also contends that the circuit court abused its discretion by awarding Bishop attorney fees under Code § 2.2-3006(E), which states that the "court shall award reasonable attorneys' fees and costs to the employee if the employee substantially prevails on the merits of a case brought under subsection B or D." Because we now reverse the circuit court's holding, Bishop is no longer entitled to attorney fees under Code § 2.2-3006(E), and the award of attorney fees is vacated.

---

[7] The entirety of Bishop's Title VII argument on appeal is simply that he should not have been penalized for failure to report a rumor because doing so "could have Title VII implications."

## III. CONCLUSION

For these reasons, we reverse the circuit court's decision and, as a result, we do not reach the merits of the second assignment of error.

*Reversed and vacated.*

Raphael, J., concurring.

I agree with the majority that Bishop's claim in this case is not subject to judicial review under Code § 2.2-3006(B). I write separately to call attention to a feature of the State Grievance Procedure that has been overlooked from time to time—judicial review is not available to an aggrieved employee who claims to have been dismissed because of the agency's misapplication of its own internal policy. To seek redress in that situation, an aggrieved employee must instead pursue an administrative appeal to the Department of Human Resource Management under Code § 2.2-3006(A).

The circuit court overturned the hearing officer's decision to dismiss Bishop from his job after concluding that the hearing officer misapplied the standard under which Bishop failed to report an allegedly inappropriate relationship between a supervisor and a subordinate. The reporting requirement is found in part 135.1(V)(A)(3) of the Standards of Conduct of the Virginia Department of Corrections (VDOC). The prohibition on "dating or engaging in personal romantic or sexual relationships with subordinates" is found in part 135.3(IV)(H)(2)(a) of VDOC's Standards of Ethics & Conflict of Interest Operating Procedure.

I agree with the majority that Bishop's appeal to the circuit court and to this Court is not cognizable under the State Grievance Procedure because VDOC's internal policy is not a "law" for purposes of the "contradictory to law" review allowed by Code § 2.2-3006(B). That phrase—"contradictory to law"—is *sui generis*, a term of art appearing only once in the Code of Virginia. *See Va. Dep't of State Police v. Barton*, 39 Va. App. 439, 445 (2002) ("the first and only appearance . . . as a standard of appellate review"). Our Court held twenty years ago in *Barton* that a claim that the hearing officer misapplied the agency's own policies does not involve a "law" within the meaning of Code § 2.2-3006(B). *Id.* at 446-47. "Interpretation of

- 13 -

state agency policy is itself a matter of policy, absent a statutory enactment to the contrary, and not a matter of law." *Id.* at 446.

The Supreme Court agreed with our reading of the State Grievance Procedure in 2009, explaining that "[t]he appealing party must 'identify [a] constitutional provision, statute, regulation or judicial decision which the [hearing officer's] decision contradicted.'" *Va. Polytechnic Inst. & State Univ. v. Quesenberry*, 277 Va. 420, 429 (2009) (second and third alterations in original) (quoting *Tatum v. Va. Dep't of Agric.*, 41 Va. App. 110, 122 (2003)). In *Quesenberry*, the Court held that Virginia Tech's anti-discrimination policy did not qualify as a "law" for purposes of judicial review of the university's alleged misinterpretation of the policy. *Id.*

An agency's internal standard or policy is plainly not a "constitutional provision," "statute," or "judicial decision." And as our cases have explained, a policy is not a "regulation" either because a "regulation" must be "found in the Virginia Administrative Code." *Burke v. Catawba Hosp.*, 59 Va. App. 828, 835 (2012). As a result, our Court has repeatedly held that we cannot review a claim under the State Grievance Procedure that a hearing officer misapplied the agency's own standards or policies. *E.g.*, *Murphy v. Va. Dep't of State Police*, 68 Va. App. 716, 722 (2018) (rejecting claim based on misapplication of agency's "Grievance Procedure Manual"); *Passaro v. Va. Dep't of State Police*, 67 Va. App. 357, 367 (2017) (rejecting claim based on misapplication of agency's "General Order"); *Burke*, 59 Va. App. at 835 (rejecting claim based on agency's interpretation of its "Departmental Instruction"); *Va. Dep't of Transp. v. Stevens*, 53 Va. App. 654, 663 (2009) (rejecting claim based on agency's "Standards of Conduct").

An avenue exists to pursue such claims, however. Under the tripartite system established by the State Grievance Procedure, "whether the hearing decision is consistent with policy" is

reviewable by "the Director of the Department of Human Resource Management . . . within 30 days of the conclusion of any other administrative reviews." Code § 2.2-3006(A). *See Quesenberry*, 277 Va. at 428-29. In other words, "By express statutory command, 'an appeal from a hearing officer's interpretation of policy goes to the director of the [DHRM], not the circuit court.'" *Burke*, 59 Va. App. at 835 (alteration in original) (quoting *Commonwealth v. Needham*, 55 Va. App. 316, 327-28 (2009)). As VDOC and the majority point out, however, Bishop did not seek DHRM review of whether the hearing officer misapplied VDOC's own reporting policies.